IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHRYN GAY,<br>*Plaintiff*, | : | |
| v. | : | CIVIL ACTION NO. 18-CV-2880 |
| THE CHILDREN'S HOSPITAL OF<br>PHILADELPHIA, *et al.*,<br>*Defendants*. | : | |

## MEMORANDUM

QUIÑONES ALEJANDRO, J.                                           JULY 16, 2018

Plaintiff Kathryn Gay, ("Gay"), proceeding *pro se*, brings this civil action against Defendant Children's Hospital of Philadelphia and several individuals who work there; *to wit*: Eleni Lantzouni, Jennifer Louis-Jacques, Michele Zucker, Leela Jackson, Katie Hoeveler, Mortimer Poncz, and Alan R. Cohen. She has also filed a Motion for Leave to Proceed *In Forma Pauperis*. (ECF No. 1.) For the following reasons, Gay's motion for leave to proceed *in forma pauperis* is granted, and her Complaint is dismissed with leave to amend.

## I. FACTS

This suit avers claims regarding the treatment of Gay's only child, K, by the Defendants during K's hospitalization, and allegations that the Defendants failed to report suspected child abuse to the appropriate child welfare agencies. Gay contends that she has "Post-Traumatic Stress Disorder (PTSD) as a result of Defendants' conduct during her only child's hospitalization from June 14th through July 1, 2016, inclusive." (Compl. at 3.)[1] Gay claims that she and K were "victims of domestic violence." (*Id.*) Gay alleges that despite this, the Defendants failed to

---

[1]     For the purpose of this memorandum, the Court will use the pagination assigned to the Complaint by the CM/ECF docketing system.

1

report the abuse, which "hampered implementation of a child safety plan." (*Id.*) Gay states that K was "medically stable for outpatient treatment," but that K was hospitalized "without parental consent," causing further trauma. (*Id.*) Gay states that she did "appreciate[]" the "egregious extent of the Defendants' actions" until March 12, 2018, when she received K's medical records. (*Id.*) She had not requested these records "prior to K's death due to intimidation and harassment by K's father." (*Id.*)

Gay goes on to assert in the complaint that "[m]ultiple people witnessed K's 'disturbing reaction to her father.'" (*Id.*) Despite this, "the sole allegation of abuse was against the Plaintiff by a lead CHOP clinician who had never met Plaintiff or K, but was an associate of K's father, a former CHOP employee." (*Id.*) Gay contends that her PTSD "directly stems from the Defendants' subjecting K to medical treatment deemed unnecessary by third party physicians reviewing CHOP data." (*Id.*) She states that she has been "traumatized . . . for life" because of "K's nightmares of CHOP and PTSD shortly before her death on December 17, 2017." (*Id.*)

According to Gay, the Defendants caused her PTSD "while engaging in a pattern of racketeering activity, for motives both economic and non-economic, by subjecting K to medically unnecessary inpatient hospitalization without parental consent, thereby depriving the plaintiff and her child of civil rights." (*Id.* at 7.) When K was admitted to CHOP, Gay "submitted a written history of domestic violence as background for K's eating disorder." (*Id.*) K told many CHOP employees that she did not feel safe around her father. (*Id.*) She only stopped eating when her father was present. (*Id.*)

Gay states that a social worker, Brittany, "was dismissive of the Plaintiff who described K's long history of anxiety and depression, including suicide ideation at age 10." (*Id.*) When Gay told Brittany that "K's eating disorder started after the father physically forced meat into

2

K's mouth with a spoon because he opposed K's lacto-ovo vegetarian diet, Brittany replied that, 'The responsible parent is supposed to force feed their child.'" (*Id.*) Subsequently, Gay was contacted by Paula Ward, a supervisor with Philadelphia DHS, who told Gay that "contrary to DHS findings, Brittany said there was no evidence of abuse." (*Id.*)

Gay alleges that Eleni Lantzouni, Jennifer Louis-Jacques, and Michele Zucker, all of whom were doctors at CHOP during the relevant time period, "[f]ailed to report suspected child abuse to Montgomery County despite child saying that she was force [fed] meat and felt unsafe with father." (*Id.* at 8-9.) She notes that Dr. Lantzouni "entered erroneous patient history in patient records, including inaccurate information on DHS involvement." (*Id.* at 8.) She also "failed to appreciate that all subsequent father-approved behavioral health providers deferred to CHOP" and that Gay "was prevented from effectively advocating for K due to the legal constraints of the Custody Order." (*Id.* at 8-9.)

According to Gay, Leela Jackson is the individual who performed a psychological evaluation "by checking off K's responses to routine questions while other people [were] in the room." (*Id.* at 9.) She also "[f]ailed to report child abuse to Montgomery County despite child stating that she felt unsafe with father," and "[f]ailed to perform a thorough evaluation following standard protocol as requested by [Gay] and Phila DHS supervisor, Paula Ward." (*Id.*) Likewise, Gay faults Dr. Katie Hoeveler for failing to report an allegedly "unstable home situation" to Montgomery County Child Safety. (*Id.* at 10.)

As to Dr. Mortimer Poncz, Gay alleges that he, as a mandated reporter, "was duty-bound to report a child for abuse." (*Id.*) She contends that his sole child abuse report was that Gay deprived K of food and water. (*Id.*) Gay states that "'good faith' is presumed with this responsibility." (*Id.*) She alleges that "[t]he unfounded allegation of the Plaintiff abusing K[]

3

raises concerns of bias preventing the Plaintiff from protecting and seeking appropriate care for K at CHOP." (*Id.*)

Finally, Gay seeks to hold Alan R. Cohen, a former Chief "of the same CHOP Section as Poncz," responsible for failing to report abuse despite being duty-bound to do so. (*Id.* at 10-11.) She states that he was "informed of the 'Catch-22' that Philadelphia DHS and the Plaintiff's attorney were in (Emergency and Expedited Petitions to change custody were denied because the child was deemed by Family Court to be safe at CHOP)." (*Id.* at 11.) According to Gay, the custody order could not be changed "[b]ecause CHOP had failed to report abuse to Montgomery County DHS." (*Id.*)

Gay states that she is asserting claims against the Defendants pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Civil Rights Act of 1964, 18 U.S.C. §§ 241, 242, and 245, and 42 U.S.C. §§ 1983 and 1985. (*Id.* at 2.) As relief, she seeks a declaratory judgment that the Defendants "have been in violation of Plaintiffs' constitutional rights," and that the Defendants' actions be "adjudged and declared to have been conspiracy, racketeering, influence, and corruption." (*Id.* at 4.) She also asks that the Court order her to undergo "a domestic violence evaluation by [her] chosen expert" and order the Defendants "to undergo education in recognizing adverse childhood events by [her] chosen expert." (*Id.*) She further requests that the Defendants advance her $100,000.00 to secure legal representation and that the Court enter an injunction "temporarily seiz[ing] all Defendants' assets and prevent[ing] the transfer of potentially forfeitable property." (*Id.*) Finally, Gay seeks a performance bond from Defendants of $2 million, compensatory damages of not less than $2 million, punitive damages of not less than $2 million, "treble damages pursuant to RICO law," and all legal fees and costs. (*Id.*)

## II. STANDARD OF REVIEW

Gay's motion for leave to proceed *in forma pauperis* is granted because it appears that she is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies. This provision requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Thus, the Court is required to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Gay is proceeding *pro se*, this Court construes her allegations liberally. *See, Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Claims Brought on Others' Behalf

Gay states that she is raising her claims "individually and as the parent [of] K and on behalf of [a]ll [o]thers [s]imilarly [s]ituated." (Compl. at 1.) Gay, however, lacks standing to pursue claims on behalf of her child's estate and others and, even if they were parties to this case, she would not be able to represent them because a non-attorney proceeding *pro se* may not represent others in federal court. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (a *pro se* litigant who is not an attorney may not pursue claims on behalf of anyone other than himself). Moreover, there

is no apparent basis for a class action here. The Court will therefore dismiss any claims raised on behalf of these individuals without prejudice.

B.   **Claims Under the RICO Act**

Gay raises a RICO claim against the Defendants. (Compl. at 2.) The federal civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter [which prohibits racketeering activity,] may sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c). "[I]n construing the federal RICO law, [the Third] Circuit has rejected the argument that personal injuries qualify as RICO injuries to 'business or property.'" *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 323 (3d Cir. 2014) (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 492 (3d Cir. 2000)). Furthermore, RICO does not provide a cause of action where the damages alleged are "speculative." *Maio v. Aetna, Inc.*, 221 F.3d 472, 495 (3d Cir. 2000) (speculative damages that were "predicated exclusively on the *possibility* that future events might occur" could not form the basis of a RICO injury).

Nothing in the Complaint provides a plausible basis for concluding that Gay suffered a non-speculative injury to business or property that would give her standing to raise a RICO claim. Gay's mental and emotional distress are not injuries to "business or property" for purposes of RICO. *Clark v. Conahan*, 737 F. Supp. 2d 239, 255 (M.D. Pa. 2010) (observing that "[m]ental distress, emotional distress, and harmed reputations do not constitute injury to business or property sufficient to confer standing on a RICO plaintiff" and explaining that "injury for RICO purposes requires proof of concrete financial loss, not mere injury to an intangible property interest"). Moreover, Gay's failure to allege an injury to business or property is fatal to her RICO conspiracy claims. *Magnum v. Archdiocese of Phila.*, 253 F. App'x 224, 229 (3d Cir.

2007) ("A plaintiff alleging a civil RICO violation under *either* § 1962(c) or (d) must plead a cognizable injury to 'business or property' under § 1964(c).").

C. **Claims Under Criminal Statutes**

Gay also vaguely contends that the Defendants have violated various criminal statutes, namely, 18 U.S.C. §§ 241, 242, and 245. (Compl. at 2.) Criminal statutes, however, do not provide a basis for civil liability. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"); *see also Carpenter v. Ashby*, 351 F. App'x 684, 688 (3d Cir. 2009) (per curiam) (noting that neither § 241 nor § 242 create civil causes of action); *Cooley v. Keisling*, 45 F. Supp. 2d 818, 820 (D. Or. 1999) (concluding that 18 U.S.C. § 245 does not provide a private right of action). Accordingly, any claims brought pursuant to criminal statutes will be dismissed.

D. **Claims Under the Civil Rights Act of 1964**

Gay also vaguely asserts that the Defendants have violated the Civil Rights Act of 1964. (Compl. at 3.) However, nothing in the Complaint suggests that the Defendants discriminated against Gay on the basis of race, color, religion, gender, or national origin. Accordingly, any claims brought pursuant to any title of the Civil Rights Act of 1964 will be dismissed.

E. **Claims Under 42 U.S.C. § 1985**

Gay next vaguely suggests that the Defendants' actions have violated 42 U.S.C. § 1985. (Compl. at 2.) "[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any

right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct").[2] While Gay seems to suggest that the Defendants conspired against her, she fails to mention the type of race- or class-based discrimination that is required to state a claim under § 1985(3). Therefore, the Court will dismiss this claim as well.

E. **Claims Under 42 U.S.C. § 1983**

Gay also vaguely raises claims pursuant to 42 U.S.C. § 1983. (Compl. at 2.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Action under color of state law requires that the one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quotation omitted).

Here, Gay appears to allege that the Defendants violated her constitutional rights by failing to report suspected child abuse to the appropriate authorities and by hospitalizing K without parental consent. The United States Supreme Court has recognized that parents have a "constitutionally protected liberty interest in the care, custody, and management of their children." *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996) (citations omitted). The United States

---

[2] Section 1985(1) and 1985(2) have no applicability here, as nothing in the Complaint suggests that Gay was either an officer who was prevented from performing her duties or was deterred from attending a court proceeding to testify therein.

Court of Appeals for the Second Circuit has suggested "that the right to care, custody, and management of one's child encompasses the right to direct that child's medical care, and therefore an infringement of that right can violate a parent's right to procedural due process." *Phillips v. Cty. of Orange*, 894 F. Supp. 2d 345, 375 (S.D.N.Y. 2012) (citations to Second Circuit cases omitted). Here, however, Gay's Complaint, as pled, does not plausibly suggest that the Defendants were state actors who could be potentially liable for infringing upon Gay's due process rights.

The Eastern and Southern Districts of New York have concluded that reporting suspected child abuse, as Gay alleges that Dr. Poncz did, does not constitute state action. *See, e.g., Storck v. Suffolk Cty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 941 (E.D.N.Y. 1999) (concluding that physicians who reported their suspicions of child abuse pursuant to state law were not state actors); *Deckon v. Chidebere*, No. 93 Civ. 7965, 1995 WL 555684, at *3-4 (S.D.N.Y. Sept. 19, 1995) (concluding no state action existed when hospital reported suspected child abuse to government agency). Likewise, the Southern District of New York appears to have suggested that the failure to report suspected abuse does not constitute state action, even if the individuals alleged to have failed to report such abuse are classified as mandated reporters under state law. *Cf. Preston v. New York*, 223 F. Supp. 2d 452, 465 (S.D.N.Y. 2002) (finding private hospital not a state actor despite its obligations to preserve evidence and report suspected abuse where its actions were limited to a medical examination and having doctors available as witnesses and did not include a report of suspected abuse). However, the Second Circuit has held that when a traditionally private entity is acting as "part of the reporting and enforcement machinery for [] a government agency charged with detection and prevention of child abuse and neglect," that

entity is a state actor for purposes of § 1983. *Kia P. v. McIntyre*, 235 F.3d 749, 756 (2d Cir. 2000).[3]

At this time, Gay's Complaint, as pled, does not allow the Court to conclude that the Defendants are state actors for purposes of § 1983. As noted above, the Defendants do not become state actors solely because, as mandated reporters under state law, they reported or failed to report suspected child abuse. It is unclear from Gay's Complaint whether Defendants were only providing medical care to K during the relevant time period or if she had been medically cleared for release and was solely being held because of an investigation by Philadelphia DHS. Accordingly, the Court will dismiss Gay's § 1983 claims at this time.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Gay leave to proceed *in forma pauperis* and will dismiss her Complaint. This dismissal will be without prejudice to Gay's right to file an amended complaint within thirty (30) days in the event that she can cure the defects noted above. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). An appropriate Order follows.

BY THE COURT:

**NITZA I. QUIÑONES ALEJANDRO**
*Judge, United States District Court*

---

[3] In *Kia P.*, the parents of a newborn who tested positive for methadone brought suit alleging that their rights were violated when the child was held at the hospital for ten (10) days after birth without a hearing. 235 F.3d at 756. The Second Circuit noted that the hospital and its employees were not subject to liability under § 1983 for the time period between birth and medical clearance when the hospital was acting "in its capacity as a private provider of medical care." *Id.* Only when the hospital refused to release the newborn to parents after medical clearance and was holding the newborn "as part of the State's effort to detect and prevent child abuse" did it become a state actor for purposes of § 1983. *Id.* at 757.