UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHRYN GAY, <br><br>    Plaintiff, <br><br>    v. <br><br> THE CHILDREN'S HOSPITAL OF <br> PHILADELPHIA, *et al.* <br><br>    Defendants. | ) <br> ) <br> ) <br> ) <br> )     Case No. 2:18-cv-02880-NIQA <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### **BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

DILWORTH PAXSON LLP
Patrick M. Harrington, Esquire
Atty ID No. 317998
1500 Market Street, Suite 3500E
Philadelphia, PA 19102-2101
P: (215) 575-7000 / F: (215) 575-7200
pharrington@dilworthlaw.com
*Attorneys for Defendants*

Date: November 21, 2018

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   FACTUAL AND PROCEDURAL HISTORY ......................................................... 2

      A.    Pertinent Facts.............................................................................................. 3

      B.    Plaintiff's Initial Complaint is Dismissed.................................................... 4

III.  ARGUMENT............................................................................................................ 6

      A.    Legal Standard .............................................................................................. 6

      B.    Plaintiff's § 1983 Claim Fails ...................................................................... 7

      C.    Plaintiff's § 1985 Claim Fails ...................................................................... 9

IV.   CONCLUSION....................................................................................................... 11

i

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Whitman,*
    114 F.3d 1392 (3d Cir. 1997).................................................................................... 1

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................ 6

*Banerjee v. Philadelphia CHOP*,
    2018 WL 3078887 (E.D. Pa. June 21, 2018) .......................................................... 7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................ 6

*Billups v. Penn State Milton S. Hershey Med. Ctr.*,
    910 F. Supp. 2d 745 (M.D. Pa. 2012) ..................................................................... 8

*Court in Guerrero v. Bensalem Racing Association, Inc.,*
    25 F. Supp. 3d 573 (E.D. Pa. 2014) ..................................................................... 1, 7

*Evancho v. Fisher*,
    423 F.3d 347 (3d Cir. 2005).................................................................................... 6

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009).................................................................................... 6

*Guerrero v. Bensalem Racing Association, Inc.*,
    25 F. Supp. 3d 573 (E.D. Pa. 2014) ....................................................................... 7

*Harvey v. Plains Twp. Police Dep't*,
    421 F.3d 185 (3d Cir. 2005).................................................................................... 9

*Kia P. v. McIntyre*,
    235 F.3d 749 (2d Cir. 2000)............................................................................ 2, 5, 8, 9

*Lake v. Arnold*,
    112 F.3d 682, 687 (3d Cir.1997)............................................................................. 10

*McArdle v. Hufnagel*,
    588 F. App'x 118 (3d Cir. 2014) ............................................................................ 10

*McGary v. Williamsport Reg'l, Med. Ctr.*,
    2013 WL 12138900 (M.D. Pa. 2013) ...................................................................... 9

*Simmons v. Twp. of Moon*,
    601 A.2d 425 (Pa. Commw. Ct.1991) ..................................................................... 10

*Tucker v. City of Philadelphia*,
   2017 WL 5010032 (E.D. Pa. 2017) ...................................................................................... 11

## STATUTORY AUTHORITIES

28 U.S.C. § 1915(e)(2)(B)(ii) ................................................................................................ 4

42 U.S.C. § 1983.............................................................................................................. 1, 5, 7

42 U.S.C. § 1983(3) ............................................................................................................. 10

42 U.S.C. § 1985 ........................................................................................................... passim

42 U.S.C. § 1985(3) ............................................................................................................. 10

## RULES AND REGULATIONS

Fed. R. Civ. P. 12(b)(6)............................................................................................... 2, 4, 6, 11

## I.     **INTRODUCTION**

Plaintiff, like any parent, is understandably devastated by the death of her daughter, K., in December 2017 and while Defendants "do not intend [to] minimize the immensity of [Plaintiff's] tragic loss" as "[a]ny parent would appreciate that it is of monumental proportion," "our task is to apply those principles that control and guide legal analysis[.]" *Alexander v. Whitman*, 114 F.3d 1392, 1409 (3d Cir. 1997).

Plaintiff's Amended Complaint[1] ("**Complaint**"), while filled with a substantial volume of facts and rhetoric concerning the dynamic among Plaintiff, K., and K.'s father, can be pared to one fundamentally flawed allegation – that Children's Hospital of Philadelphia ("**CHOP**"), along with the named employees and medical staff, deprived Plaintiff of certain constitutionally-protected parental rights.  This one allegation takes numerous forms throughout the Complaint, but in each instance, the claim necessarily involves governmental deprivation of these purported rights.  However, and fatal to the Complaint, is the fact that CHOP is not a governmental entity, but rather a private institution.  Accordingly, the alleged violations of the Fourth Amendment, 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1985 ("Section 1985") cannot lead to relief, in that these Federal Laws restrict governmental action, not the activities of private institutions such as CHOP.

Plaintiff tries to cure this defect by pleading that CHOP was operating "under color of state law."  However, such allegations fail under the rubric developed by this Court in *Guerrero v. Bensalem Racing Ass'n, Inc.*, 25 F. Supp. 3d 573 (E.D. Pa. 2014).  Furthermore, this Court, in its July 6, 2018 Order dismissing Plaintiff's Initial Complaint without prejudice, discussed and

---

[1]     While not explicitly titled as such, for the purposes of differentiating between Plaintiff's "Initial" Complaint filed on June 20, 2018 (which was dismissed without prejudice by this Court's July 16, 2018 Order) and Plaintiffs "Amended" Complaint filed on August 13, 2018, Defendants will refer to the former as the "Initial Complaint" and the latter as the "Amended Complaint."

120470439_1

cited a second circuit case, *Kia P. v. McIntyre*, 235 F.3d 749, 756 (2d Cir. 2000) that held that "when a traditionally private entity is acting as 'part of the reporting and enforcement machinery for [] a government agency charged with detection and prevention of child abuse and neglect,' that entity is a state actor for purposes of § 1983." In the context of *Kia P*, this Court stated that "[i]t is unclear from Gay's Complaint whether Defendants were only providing medical care to K during the relevant time period or if she had been medically cleared for release and was solely being held because of an investigation by Philadelphia DHS." [Order at p. 10.] This uncertainty has been resolved in the Amended Complaint. Plaintiff alleges that K. was cleared for discharge to a non-acute care facility, but does not and cannot allege that K. was ever cleared for complete medical discharge. Thus CHOP was, at all times, rendering required medical treatment to K. in its role as a healthcare facility.

Finally, Plaintiff bases her §1985 claim upon CHOP's conspiracy to discriminate against a class of vegetarians. As the law is clear that a prerequisite to relief under §1985 is discrimination against a "protected class" and vegetarians ae not a "protected class," Plaintiffs § 1985 claim fails as well.

Accordingly, as CHOP is not a state actor, nor was acting under color of state law, Plaintiff's claims cannot lead to relief and Plaintiff's Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.        FACTUAL AND PROCEDURAL HISTORY

Plaintiffs Complaint weaves a lengthy narrative of domestic disputes and problems that existed and presumably still exist between Plaintiff and the father of her daughter, K. Plaintiff alleges that these intra-parental issues played a significant part in the dietary issues K faced, and directly led to K's hospitalization at CHOP. For the purposes of Defendants' Motion to Dismiss, however, only the facts alleged that pertain to Plaintiff's claims will be discussed.

### A.    **Pertinent Facts**

Plaintiff alleges that "K. was undergoing an intake process for non-medical outpatient treatment elsewhere when it was discovered that her pediatrician had mistakenly omitted phosphorous levels on a laboratory request form." [Amended Complaint at p7.]  She was brought to CHOP for the test and was received at CHOP as "a 12 year old female with anxiety and an eating disorder who presents for lab work prior to her [intake] at Renfrew." [*Id.* at p.7.]  K. was subsequently admitted to CHOP for treatment and was a patient at CHOP from June 14, 2016 through July 1, 2016. [*Id.*, at p.3.]  Plaintiff alleges that such treatment continued after it was medically necessary and that Plaintiff believes that K. was cleared for discharge to an outpatient facility before she was actually discharged. [*Id.* at p.9.](emphasis added.)

Despite alleging that "CHOP held K. in the ICU for non-medical reasons," Plaintiff  also states that "the exact date at which the defendants deemed K. medically cleared for outpatient treatment is not clear from the medical records." [*Id.* at p.9.] (emphasis added.)  Such purported failure to discharge upon being "cleared," deprived Plaintiff of her right to parent her child as she saw fit. [*Id.*].

Plaintiff alleges that "the exact date at which the defendants deemed K. medically cleared for outpatient treatment is not clear from the medical records" and further that "K. was deemed medically clear for outpatient treatment by her pediatrician on June 13." [*Id.* at p. 8,9.](emphasis added.)  However, Plaintiff does not, and cannot, allege that K. was clear to discontinue medical treatment entirely, such that CHOP was holding K. for only non-medical reasons.

Plaintiff alleges that "K's retention by CHOP was a 'seizure' within the meaning of the Fourth Amendment," and that "Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution

3

and laws." [*Id.,* at p.8.]  Plaintiff further alleges that because "CHOP was acting as part of the reporting and enforcement machinery for DHS… the hospital was a state actor." [*Id.*, at p.9.]

Plaintiff further alleges that CHOP is liable under 42 U.S.C. § 1985 because CHOP, "motivated by class-based discriminatory animus against vegetarianism[,] conspired to deprive the plaintiff of her fundamental liberty interest in the care, custody, and management of her child."   [*Id.*, at p. 14.]   Further "anti-vegetarianism policy was the basis of CHOP's discrimination against the plaintiff's right to parent her child[.]" [*Id.*]

Simply put, Plaintiff alleges that CHOP conspired to discriminate against a class of vegetarians, of which Plaintiff's daughter was a member, and because of such "animus against vegetarianism," CHOP's conspiracy deprived Plaintiff (the mother of the class member discriminated against) of her constitutional right to parent her child.

### B.      Plaintiff's Initial Complaint is Dismissed

Six days prior to the expiration of the limitations period on her claim, Plaintiff filed her initial complaint on June 20, 2018 alleging similar claims as the Amended Complaint. [See Docket Entry No. 2.]  This Court *sua sponte*, dismissed Plaintiff's initial complaint without prejudice pursuant to its July 16, 2018 Order and Opinion (the "Dismissal Opinion") for in connection with Plaintiff's Motion to Proceed *in forma pauperis*, and pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court is required to dismiss a Complaint if it fails to state a claim.  [*See* Dismissal Opinion, Docket Entry No. 4.]  The Court, using the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), determined that Plaintiff's initial complaint did not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and dismissed it without prejudice with leave to amend. [*Id.*]

In dismissing Plaintiff's initial complaint, this Court opined on, and dismissed, each of the claims raised in Plaintiff's amended complaint.[2]

With regard to Plaintiffs section 1983 claim, this Court discussed that Plaintiff "appears to allege that the Defendants violated her constitutional rights by … hospitalizing K without parental consent." [*Id.* at p.8] "[H]owever, Gay's Complaint, as pled, does not plausibly suggest that the Defendants were state actors who could be potentially liable for infringing upon Gay's due process rights." [*Id.* at p.9] This Court went on to discuss that other districts have held that "when a traditionally private entity is acting as 'part of the reporting and enforcement machinery for [] a government agency charged with detection and prevention of child abuse and neglect,' that entity is a state actor for purposes of § 1983." [*Id.* (quoting *Kia P. v. McIntyre*, 235 F.3d at 756).] This Court held that, as "[i]t is unclear from Gay's Complaint whether Defendants were only providing medical care to K during the relevant time period or if she had been medically cleared for release <u>and was solely being held because of an investigation by Philadelphia DHS</u>." [*Id.*] (emphasis added.)

Further, in evaluating and dismissing Plaintiff's section 1985 claim, this Court held clearly that "[w]hile Gay seems to suggest that the Defendants conspired against her, she fails to mention the type of race or class-based discrimination that is required to state a claim under § 1985(3)" [*Id*. at p. 8.]

Plaintiff filed her Amended Complaint on August 13, 2018, in which she included two claims under §§ 1983 and 1985, respectively, but for the reasons stated herein Plaintiff's claims fail as a matter of law.

---

[2]    The Court also opined on, and dismissed other of Plaintiff's claims that did not appear in the amended complaint, including Plaintiff bringing (1) Claims on other's behalf, (2) Claims under the RICO act, (3) Claims under criminal statutes, and (4) Claims under the Civil Rights Act of 1964.

### III.     ARGUMENT

#### A.     Legal Standard

A court should grant a Rule 12(b)(6) motion to dismiss where the complaint fails to state a claim upon which relief can be granted.  Fed. R .Civ. P. 12(b)(6).  When ruling on a motion to dismiss, the court must accept all factual allegations as true and draw all reasonable inferences in a light most favorable to the plaintiff.  *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).  A well-pleaded complaint must contain more than mere labels and conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).   Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Courts conduct a two-part analysis to determine whether dismissal is appropriate.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  First, the factual and legal elements of a claim are separated.  *Id.*  The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  *Id.* at 210-11.  Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "plausible claim for relief."  *Id.* at 211; *see also Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 570.  Factual allegations must be sufficient to conclude that plaintiff's right to relief is more than speculative.  *Twombly*, 550 U.S. at 545.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  This inquiry is context-specific and "require[s] the reviewing court to draw on its experience and common sense."  *Id.* at 679 (citation omitted).  In this case, Plaintiff's claims cannot lead to relief under the theories proposed by Plaintiff, for such claims require state action, or action under color of state law.  Fatal to this requirement is that as this Court has recently held that CHOP is not a state actor, and there is no basis to consider Defendants to have been operating under color

6

of state law.  Thus Plaintiff's claims must fail and Plaintiff's Amended Complaint should be Dismissed with Prejudice.

### B.  Plaintiff's § 1983 Claim Fails

As an initial matter, this Court has recently held it "ha[s] no basis to find CHOP is a state actor for possible civil rights claims." *Banerjee v. Philadelphia CHOP*, 2018 WL 3078887, at *2 (E.D. Pa. June 21, 2018).  Thus liability may only attach if CHOP was acting "under the color of state law" with respect to the section 1983 claim.

"Section 1983 subjects to liability those who deprive persons of federal constitutional or statutory rights 'under color of any statute, ordinance, regulation, custom, or usage' of a state." *Guerrero v. Bensalem Racing Ass'n, Inc.*, 25 F. Supp. 3d 573, 590 (E.D. Pa. 2014) (quoting 42 U.S.C. § 1983.) The *Guerrero* court discussed that under Section 1983, a plaintiff must plead both "[1] deprivation of a constitutional right and [2] that the constitutional deprivation was caused by a person acting under the color of state law." *Id.*  "Both elements are necessary to make out a successful Section 1983 claim." *Id.*  In her Amended Complaint, Plaintiff alleges three facts that purport to establish that CHOP operated under color of state law: (1) that Defendants kept K. after she was cleared for discharge to an outpatient facility (an alleged "seizure" under the Fourth Amendment); (2) that Defendants billed K's government insurance; and (3) that Defendants reported alleged abuse by the Plaintiff to Philadelphia DHS.

With regard to the first allegation, that CHOP held K. after she was purportedly suitable for discharge to an outpatient facility, this Court in its Dismissal Order discussed that as "[i]t is unclear from Gay's Complaint whether Defendants were only providing medical care to K during the relevant time period or if she had been medically cleared for release <u>and was solely being held because of an investigation by Philadelphia DHS</u>." [Dismissal Order, at p. 9] (emphasis added.)  As pled, Plaintiff answers this question clearly.  K. was purportedly "deemed

7

medically clear for outpatient treatment" and was "cleared for outpatient treatment." [Complaint at pp. 8-9.] Thus, K. was medically stable enough to seek non-acute care treatment at an outpatient facility, but by no means was medically stable enough to discontinue medical treatment entirely. Even Plaintiff's "third-party physicians reviewing CHOP data [determined that] K was *always* stable for outpatient treatment." [Complaint at p. 10.] Simply, it is clear that K. was in constant need of medical support as evident from Plaintiff's Complaint and a review of the medical records to which Plaintiff refers therein.

The narrow holding referenced by this Court in *Kia P. v. McIntyre*, 235 F.3d 749, 756 (2d Cir. 2000) pertained to an infant who was born with an addiction to methadone. The baby was otherwise fine, and the healthcare facility was holding the child only because of an investigation by the applicable social services agency resulting from the baby's addiction. Here, even if K.'s home situation was troubled, she still required substantial medical care. Thus this exception is inapplicable to the instant matter. Furthermore, in *Billups v. Penn State Milton S. Hershey Med. Ctr.*, 910 F. Supp. 2d 745 (M.D. Pa. 2012), the Middle District analyzed a case where a minor was admitted to a medical facility to solely "conduct an investigation into, and render a conclusion about, whether suspected child abuse is, in fact, actual child abuse." *Billups*, 910 F. Supp. 2d at 757. The Middle District held, similar to the *Kia P* court, that as the minor was being held in the medical facility "not … for the purpose of treating her injuries but, rather, for the purpose of determining whether her injuries were the result of criminal activity," "these allegations support a finding of state action." *Id. (*citing *Kia P.*) In both *Billups* and *Kia P*, the medical facilities has stopped rendering medical treatment and were only keeping the minor patient in connection with a social services investigation. Here, K. required continuing and substantial medical treatment, such that she was never cleared for outright discharge, but rather

8

only possible discharge to a medical facility offering a lesser level of care, *i.e.* an outpatient facility.  [See Complaint at pp. 8-10.]  Thus, the narrow holdings of *Kia P* and *Billups* do not apply to the facts of this matter where *K.* remained at CHOP for reasons other than a social services investigation.

As to Plaintiff's contention that billing K.'s government insurance or CHOP's receipt of such insurance monies constitutes "state action,"  the law in this circuit has been settled for decades that receipt of state and federal funding, such as Medicare and Medicaid payments, does not create state action. *McGary v. Williamsport Reg'l, Med. Ctr.*, 2013 WL 12138900, at *4 (M.D. Pa. 2013).  Specifically, "[i]n *Hodge* [*v. Paoli Memorial Hospital*, 576 F.2d 563 (3d Cir. 1978)], the Third Circuit held (in accordance with the vast majority of the courts of appeal) that the receipt of … Medicare and Medicaid funds … for non-profit hospitals does not constitute state action under 42 U.S.C. § 1983."  *Id.* (citing *Hodge*, 576 F.2d at 564.)

Finally, Plaintiff alleges that Defendants were 'acting under color of state law" when they allegedly reported abuse by the Plaintiff to Philadelphia DHS.  Even if Defendants did report suspicion of abuse, it is clear that, "a private actor is not engaged in state action simply because she is compelled to take an action by a state actor." *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 196 (3d Cir. 2005).

Based upon the above, Plaintiff's § 1983 claim fails as a matter of law because (1) CHOP is not a state actor; (2) CHOP was not operating "under color of state law"; and (3) the narrow exception raised in *Kia P* and *Billups* do not apply to these facts because unlike *Kia P* and *Billups,* CHOP held K. for medical reasons and not solely for a non-medical purpose.

### C.     Plaintiff's § 1985 Claim Fails

Plaintiff alleges that CHOP is liable under 42 U.S.C. 1985 because CHOP, "motivated by class-based discriminatory animus against vegetarianism[,] conspired to deprive the plaintiff of

9

her fundamental liberty interest in the care, custody, and management of her child." [Complaint, at p. 14.] Further "anti-vegetarianism policy was the basis of CHOP's discrimination against the plaintiff's right to parent her child[.]" [*Id.*].

Plaintiff's 1985 claim fails, for it "fails to satisfy the stringent factual pleading requirements for maintenance of a civil rights action under Section 1985." *Simmons v. Twp. of Moon*, 601 A.2d 425, 432 (Pa. Commw. Ct.1991). This Court clearly articulated the standard by which a section 1985 claim is measured, in its Dismissal Order. Namely, that "to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." [Dismissal Order, at p. 8.](citation omitted.) This Court also noted that section 1985 "defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct." [*Id*.]

The Supreme Court has held that for the purposes of § 1985(3) , Plaintiff must be a member of not just a class, but rather a "protected class" – "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus for relief under 42 U.S.C. § 1985(3)." *McArdle v. Hufnagel*, 588 F. App'x 118, 120 (3d Cir. 2014). In *McCardle*, the Third Circuit upheld the district court's dismissal of Plaintiff's § 1985 claim, based upon Plaintiff's "failure to allege his membership in a protected class." *Id.* "Members of a protected class under § 1985(3) have at least one of certain 'immutable characteristics'" including "race, gender, national origin, and mental handicap." *Id*. at 121. (quoting *Lake v. Arnold*, 112 F.3d 682, 687 (3d Cir.1997).)

10

Plaintiff's explicit allegations that "class-based discriminatory animus against vegetarianism" and "anti-vegetarianism policy was the basis of CHOP's discrimination" make clear that the class she purports to be discriminated against, vegetarians, is not a protected class that is recognized for the purposes of a § 1985 claim. For this reason, Plaintiffs § 1985 claim fails and must be dismissed with prejudice.

Furthermore, "[t]o survive a motion to dismiss, a plaintiff must do more than set forth conclusory allegations of conspiracy," rather "a complaint must allege specific facts suggesting there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end." *Tucker v. City of Philadelphia*, 2017 WL 5010032, at *3 (E.D. Pa. 2017). Plaintiffs conclusory allegations of "anti-vegetarianism policy" fail to satisfy this requirement. For this reason as well, Plaintiffs § 1985 claim fails and must be dismissed with prejudice.

## IV.    CONCLUSION

For the reasons discussed above, Plaintiff has failed to state a claim in her Complaint. Therefore, the Court should dismiss the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

By:    */s/ Patrick M. Harrington*
       DILWORTH PAXSON LLP
       By: Patrick M. Harrington, Esquire
       Atty ID No.  317998
       1500 Market Street, Suite 3500E
       Philadelphia, PA 19102-2101
       P: (215) 575-7000 / F: (215) 575-7200
       pharrington@dilworthlaw.com
       *Attorneys for Defendants*

Date: November 21, 2018