## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHRYN GAY,<br><br>    Plaintiff,<br><br>    v.<br><br>CHILDREN'S HOSPITAL OF PHILADELPHIA, ELENI LANTZOUNI, JENNIFER LOUIS-JACQUES, MICHELE ZUCKER, LEELA JACKSON, KATIE HOEVELER, MORTIMER PONCZ, AND ALAN R. COHEN<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>Case No. 2:18-cv-02880-NIQA |

## DEFENDANTS' TRIAL MEMORANDUM

Defendants Children's Hospital of Philadelphia ("**CHOP**"), and Eleni Lantzouni, Jennifer Louis-Jacques, Michele Zucker, Leela Jackson, Katie Hoeveler, Mortimer Poncz, and Alan R. Cohen (collectively, "**Individual Defendants**" and with CHOP, "**Defendants**"), by and through their undersigned counsel, respectfully submit the following Trial Memorandum.

### I.     NATURE OF THE ACTION

Plaintiff brought her daughter, "K", to CHOP in 2016 for emergency treatment. Plaintiff alleges that Defendants would not permit K to be discharged, that the treatment CHOP provided to K was not medically necessary, and that CHOP was holding K as a patient for non-medical reasons.   Plaintiff contends that such "seizure" by Defendants constitutes a violation of Plaintiff's rights protected by the United States Constitution[1] and forms the basis for Plaintiff's sole remaining claim, brought under 42 U.S.C. § 1983.[2]   Specifically, Plaintiff's Section 1983

---

[1]      Plaintiff specifically refers to a violation of her rights under the Fourth Amendment only.

[2]      By way of a reminder, Plaintiff's Complaint included claims under 42 U.S.C. § 1985, which were dismissed with prejudice prior to discovery.  Plaintiff's only remaining claim is under 42 U.S.C. § 1983.

claim rests on the allegation that the medical services that CHOP provided to K were not medically necessary and, rather CHOP was acting as part of the "enforcement machinery for DHS[,]" thus rendering K's hospitalization a "seizure" for purposes of the Fourth Amendment and a violation of Plaintiff's constitutional rights.  [Amended Complaint, ECF 6 at p. 8-9.]

## II.    FACTUAL BACKGROUND

CHOP is a non-profit, private health care institution devoted to the care of sick children and adolescents.  This case is about an understandably distraught mother who tragically lost her daughter, "K," to suicide. Plaintiff seeks to recover damages from CHOP, not for her daughter's death but for Plaintiff's own emotional distress. CHOP treated K for malnutrition and anorexia seventeen months prior to K's death.  Plaintiff alleges that after bringing K to CHOP's emergency department on June 14, 2016 at the direction of the Renfrew Center of Southern NJ, where K was to have begun an outpatient eating disorder program, CHOP held her daughter as an inpatient until July 1, 2016 for non-medical reasons related to child protection.  Importantly, Plaintiff's sole claim, brought on behalf of herself, is for an alleged violation of 42 U.S.C. § 1983 ("Section 1983").  Plaintiff does not bring any claims on behalf of her daughter.[3]

Plaintiff brought her daughter, K, to the Emergency Department at CHOP on June 14, 2016 at the direction of The Renfrew Center of Southern New Jersey ("**Renfrew Center**").  The Renfrew Center, which is a subacute care and treatment facility for eating disorders, directed Plaintiff to bring K to be evaluated at an emergency room or urgent care facility due to acute medical conditions which the Renfrew Center was not equipped to handle, and required evaluation and treatment by an acute care facility where K could be stabilized prior to commencing treatment at the Renfrew Center.

---

[3]     Plaintiff's initial complaint brought claims on behalf of her daughter, and such claims were dismissed by the Court, holding that Plaintiff did not have standing to bring any such claims.

Plaintiff's daughter, K, arrived at CHOP on June 14, 2016 with severe malnutrition and required in-patient admission on due to medical instability from anorexia nervosa to monitor and stabilize the acute medical issues that existed, prior to being able to discharge K to a sub-acute care facility such as the Renfrew Center.

Shortly after arrival at CHOP, Plaintiff signed a written consent to K's admission to the Emergency Department at CHOP.  The next day, Plaintiff provided additional and separate written consent to K's admission as an inpatient at CHOP.  Notably, Plaintiff shared legal and physical custody of K at the time with Miroslaw Kozlowski (K's father), who also consented to K's admission both to the Emergency Department and also as an inpatient.  K was discharged from CHOP on Friday, July 1, 2016 after CHOP deemed it medically appropriate for K to begin the next phase of her treatment for her eating disorder, and the Renfrew Center had availability in their intensive full-day program to begin after the holiday weekend on July 6, 2016.

During the time that K was hospitalized at CHOP, her parents, Plaintiff and K's father, were engaged in an intense, active custody dispute and, prior to K's admission at CHOP, Plaintiff had been a party to litigation in family court related to custody of K.  Plaintiff has stated that she and K's father each filed report(s) against the other with child protective services agencies.

During the course of K's stay at CHOP, Plaintiff never demanded K's discharge from CHOP, nor sought to have K discharged "against doctor's orders."  The reason for Plaintiff's failure to demand a discharge for K is clearly articulated by Plaintiff in her deposition, where Plaintiff testified that she was afraid of the impact discharging K would have on her active custody dispute with K's father.  Further, she sought legal counsel about the matter and admitted that she chose not to demand K's discharge at the advice of counsel because Plaintiff, and her

3

counsel in the custody proceeding, feared that demanding discharge and/or discharging "against doctors' orders" would cause Plaintiff to lose custody to K's father.  Thus Plaintiff consented to the continuing treatment of her daughter as an in-patient at CHOP.

On December 17, 2017, nearly 18 months after her discharge from CHOP, K took her own life in the home which she shared with Plaintiff.  There is no claim that CHOP's treatment of K had anything to do with her suicide.

Many months after K's death, on March 12, 2018 Plaintiff received medical records from CHOP, which she requested just days before.  Upon reviewing these records, Plaintiff states that she now suffers from myriad debilitating psychological conditions, which render her unable to work in <u>any</u> job in <u>any</u> capacity.  Plaintiff denies that her psychological conditions arise in any way from her daughter's death by suicide or from other familial issues, but that they are exclusively attributed to her receipt of K's medical records from CHOP on March 12, 2018.  Plaintiff chose to not request these records until twenty one (21) months after her daughter's discharge from CHOP.  Plaintiff has failed to articulate in her deposition any specific revelation in the records requested and received in March 2018 that gives rise to her purportedly debilitating injury.

As to the records that Plaintiff purports caused her injuries, Plaintiff admitted and acknowledged in her deposition that the medical records (1) represent the duration of the period where K was an inpatient at CHOP where Plaintiff was present nearly every day for multiple hours a day and (2) represent the notes of the clinicians that Plaintiff met with, saw, and experienced <u>every day</u> during the hospitalization.  Notwithstanding Plaintiff's near constant involvement in her daughter's care, Plaintiff purports that reading the medical records in 2018

4

that memorialize events that occurred nearly two years earlier have rendered her completely unable to work.

Clearly, however, the driving force behind Plaintiff's conduct during the time CHOP treated her daughter was the bitter custody dispute between Plaintiff and K's father.  Just like her decision to not demand her daughter's discharge from CHOP, Plaintiff claims that she did not request the CHOP records earlier because she was concerned about the impact such a request would have in her custody dispute and/or how K's father would react to such request.

Sadly, CHOP and its clinicians, whose life's work is caring for sick children, were caught in the middle of this awful family situation.

## III.   LEGAL ISSUES

### A.  PLAINTIFF'S CLAIM FOR VIOLATION OF 42 U.S.C. § 1983 FAILS

#### (1)   Overview Of Controlling Authority

Section 1983 provides that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured" in an appropriate action.   "[T]he basic cause of action requires that a § 1983 plaintiff prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 318–19 (3d Cir. 2011).  At the core of the elemental requirements necessary to prove a Section 1983 claim is that a person acted, in the first place, under color of state law.  "Action under color of state law is a requirement in a suit under § 1983." *Neiman v. Labor Union #332*, No. CIV.A. 86-3512, 1986 WL 7646, at \*1 (E.D. Pa. July 8, 1986)(emphasis added.)  "If defendant's actions are not fairly attributable to the state, there is

no conduct under color of state law." *Id*. "[T]o state a claim under § 1983, plaintiff must allege that a person acting under color of law deprived him of his rights." *Bullock v. Painter*, No. CIV.A. 87-8423, 1988 WL 17000, at *1 (E.D. Pa. Feb. 26, 1988).  A claim under §1983 must fail where "plaintiff alleges no conduct by [a] defendant which deprived him of any of his constitutional rights." *Id. see also Poling v. K. Hovnanian Enterprises*, 99 F. Supp. 2d 502, 513 (D.N.J. 2000) (discussing that plaintiff was required to have alleged "conduct of the individual defendants' that is fairly attributable to the state").

The Third Circuit has defined three tests to determine whether an entity is a state actor: "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995).

### (2)   Plaintiff's Claims, Allegations And Evidence Provide No Basis For Finding Defendants Deprived Plaintiff Of Any Right

As a threshold matter, Plaintiff has failed to come forward with admissible evidence in support of her theory that Defendants were holding K pursuant to an order from DHS or any other government agency.  "I do not know anything about an agency directing CHOP to hold my daughter for child protective purposes." [K. Gay Dep. 244:12-14.]  Further, Plaintiff testified that she did "not have any documents" regarding any "evidence or fact of anyone who is an employee or agent of the Commonwealth of Pennsylvania that directed anyone at CHOP to hold her daughter." [*Id*. 49:1-3.]  Plaintiff does not allege in the pleadings, and has admitted in discovery that Defendants were not directed by any state agency to act, thus Defendants neither "acted with

6

the help of or in concert with state officials," nor has the state "so far insinuated itself into a position of interdependence with [Defendants] that it must be recognized as a joint participant in the challenged activity."   Accordingly, the only path to liability would be if Plaintiff could somehow show that Defendants "exercised powers that are traditionally the exclusive prerogative of the state."   Plaintiff has no evidence to support this theory and will be unable to prove her claim at trial.

Plaintiff's Section 1983 claim rests on the allegation that "K's retention by CHOP was a 'seizure' within the meaning of the Fourth Amendment," and that "Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." [Amended Complaint ECF 6 at p.8.]  To that end, Plaintiff contends that because "K was deemed medically clear for outpatient treatment by her pediatrician on June 13," the medical services provided by CHOP were not medically necessary, thus rendering K's hospitalization a "seizure" for purposes of the Fourth Amendment. [*Id*. at p.8, 9.]  Plaintiff, who is not a medical doctor and offers no expert testimony on the matter, alleges that the care provided by CHOP was not medically necessary and that K. was cleared for discharge to an outpatient facility before she was discharged by CHOP on July 1, 2016. [*Id*. at p.9.]  Plaintiff's Section 1983 claim rests on the allegation that because, in her lay opinion, the medical services that CHOP provided to K were not medically necessary, CHOP was acting as part of the "enforcement machinery for DHS[,]" thus rendering K's hospitalization a "seizure" for purposes of the Fourth Amendment and a violation of Plaintiff's constitutional rights.  [*Id.* at p. 8-9.]  Plaintiff further alleges that because a mandated reporter at CHOP reported suspected child abuse to Philadelphia DHS, which was investigated and dismissed by DHS, "CHOP was acting as part of the reporting… machinery for DHS," and Plaintiff thus

122200676_2

concludes that "the hospital was a state actor." [*Id*. at p.9.]  Compliance with a state reporting law is no more state action than complying with a speed limit on a highway or filing a legally required tax return. Compliance with state law is not state action.  Simply, Defendants provided necessary medical care at all times from K's admission on June 14, 2016 through and including K's discharge on July 1, 2016 when K moved to a sub-acute, but intensive, care facility where she attended the full-day program.  Plaintiff has no evidence of any act of Defendants that supports her claim.

**(3)    Plaintiff Has No Evidence Of Any Act Of Any Individual Defendant That Deprived Her Of Any Right**

Plaintiff admits that she had limited or no contact with many of the Individual Defendants and summarily that "[t]he reason they are Defendants is because of their positions within the institution and just their positions." [K Gay Deposition 115:24-116:5.]  Further, Plaintiff agreed that "there are not specific acts or omissions that those Defendants engaged in outside of their virtue of [their] position that lead to relief here." [*Id*. 116:12-19.]  Plaintiff admitted that the Individual Defendants were providing medical care to her daughter at all times, thus Plaintiff cannot argue that her daughter was 'seized' if her daughter was receiving medically appropriate care.  Plaintiff's contention that each Individual Defendant was holding her daughter "for purposes of child protection," is based exclusively on her inadmissible speculation that she "can't think of any reason they would have held her other than child protection." [*Id*. 34:15-16.]  She then went on to state that she thinks that K remained an inpatient for "child protective purposes" because "there was a child protection case against [her]." [*Id*. 35:24-36:1.]  Finally, Plaintiff testified that she did not attempt to discharge her daughter "at the advice of Counsel" and she "chose to not discharge [her] daughter" because she "did not want to fear" and "was afraid to

8

lose custody to [K's father]" [*Id*. 53:13-16.], effectively consenting to the continued in-patient status of her daughter.

Plaintiff testified that certain Individual Defendants were not responsive to Plaintiff's requests for medical records during the hospitalization of her daughter, but in order to be a "seizure," as Plaintiff contends, a Defendant would have been required to engage in conduct which retained Plaintiff's daughter at CHOP, and then such retention would need to have been intended to deprive Plaintiff of a Constitutional right.  Failure to provide complete medical records, during the hospitalization on the schedule the Plaintiff demanded is a red herring that has no bearing on any Fourth Amendment "seizure."  Rather, Plaintiff has provided no evidence that any Individual Defendant has engaged in any conduct that could be construed as a "seizure."

### (4)    Plaintiff's Sole Allegation That Involves DHS Cannot Lead To Liability Under §1983

There is no dispute that a CHOP employee, Dr. Mortimer Poncz, made a legally required report of suspected abuse to Philadelphia DHS based upon information Dr. Poncz received from K's father.  Plaintiff admits, however, that she never requested Dr. Poncz to discharge her daughter, "Dr. Poncz never treated [her] daughter," neither Plaintiff nor her daughter ever met Dr. Poncz, and Plaintiff "did not know of his name at the time." [K. Gay Deposition 104:11-21.] In fact, in Plaintiff's Amended Complaint, one of the forms of relief sought by Plaintiff was for this Court to "Grant[] an order that he be introduced to the plaintiff."[4] [Amended Complaint, ECF 6 at p. 4.]  Plaintiff further contends that "Mortimer Poncz did not act in 'good faith' pursuant to Pennsylvania Child Protection Law, when alleging that Plaintiff endangered K."

---

[4]     This introduction and other unorthodox forms of equitable relief sought by Plaintiff that Defendants contend cannot be granted from this, or any Court are the subject of a Motion *In Limine* [ECF 98] filed by Defendants.  Note that Plaintiff, in her opposition to Defendants' Motion *In Limine* [ECF 107] withdraws the request for an introduction to Dr. Poncz.

[Plaintiff's Response to Defendants' Interrogatory No. 17.]  Plaintiff further was asked "[b]ased upon your allegation that Dr. Poncz had made a report to Child Protective Services that you allege was made in bad faith, are there other acts or omissions of Dr. Poncz that form the basis of your 1983 claim?" [K. Gay Deposition 80:13-17.]  Plaintiff affirmed that there were not, and the mandatory report by Dr. Poncz, "is the sole basis for Dr. Poncz, the bad faith alleged reporting to Child Protective Services" along with "other aspects of Child Protective Services Law that may have been violated." [*Id*. 80:20-81:1.]  However, when asked what violations of Child Protective Services Law Plaintiff contends were violated, she could not "articulate" any. [*Id*. 82:6-8.]

Pursuant to 23 PA CSA §6318, titled "Immunity from liability," '[a] person, hospital, institution, school, facility, agency or agency employee <u>acting in good faith</u> shall have immunity from civil and criminal liability that might otherwise result from… [m]aking a report of suspected child abuse or making a referral for general protective services, regardless of whether the report is required to be made under this chapter." 23 PA CSA §6318. (emphasis added.) Furthermore, such "good faith…<u>shall be presumed</u>." [*Id*.] (emphasis added.)  Dr. Poncz is a mandatory reporter pursuant under Pennsylvania's Child Protective Services Law, 23 Pa. C.S. § 6311, and, notably, a report compelled by law does not make the reporter into a state actor.  *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 196 (3d Cir. 2005) ("a private actor is not engaged in state action simply because she is compelled to take an action by a state actor"). Furthermore, because Dr. Poncz is a mandatory reporter, he has statutory immunity pursuant to 23 PA CSA §6318, and thus cannot be liable as result of a report made pursuant to statute. Nonetheless, Plaintiff affirmed her contention that "a mandated reporter [who] made a report against [her] is the basis for [her] belief that CHOP held her daughter for child protective as compared to medical purposes". [K. Gay deposition 40:5-10.]  Specifically, Plaintiff's position is

122200676_2

that "one of the factors that supports [her] allegation that CHOP is acting under color of state law is the fact that [Dr. Poncz] reported me for child protection purposes." [*Id*. 50:21-51:1.]  As to Dr. Poncz, himself, "the sole basis for" Plaintiff's Section 1983 claim against Dr. Poncz is his "reporting to Child Protective Services" along with "other aspects of Child Protective Services Law that may have been violated," which Plaintiff could not "articulate." [*Id*. 82:6-8.]

Plaintiff has offered no evidence to overcome the presumption that any report made by a mandatory reporter was made in good faith and thus, Dr. Poncz is immune from liability as a matter of law by the plain language of 23 PA CSA §6318.

## IV.    CONCLUSION

As the evidence put forth by Plaintiff does not prove the elements of her claims, Plaintiff cannot prove the elements to support her claim under Section 1983 at trial.  As such, Defendants will move the Court, at an appropriate time, for judgment as a matter of law upon conclusion of Plaintiff's case-in-chief.

Respectfully submitted,

Dated:  April 16, 2021         */s/ Patrick M. Harrington*
Patrick M. Harrington, Esq.
Danielle Goebel, Esq.
DILWORTH PAXSON LLP
1500 Market Street, 1500E
Philadelphia, PA 19102
Tel:  215-575-7000
*Attorneys for Defendants*

11