IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATHRYN GAY** <br> *Plaintiff* <br><br> v. <br><br> **THE CHILDREN'S HOSPITAL OF PHILADELPHIA; ELENI LANTZOUNI; JENNIFER LOUIS-JACQUES; MICHELE ZUCKER; LEELA JACKSON; KATIE HOEVELER; MORTIMER PONCZ; AND ALAN R. COHEN** <br> *Defendants* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CIVIL ACTION** <br><br> **NO. 18-2880** |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO MAINTAIN TRIAL SCHEDULE

### INTRODUCTION

On March 19, 2023, Defendants' counsel informed Plaintiff that Defendants would be filing a motion to continue the trial in this case. As detailed more fully below, Plaintiff has given every courtesy to Defendants to date. Plaintiff, however, cannot extend courtesies when the extension of such courtesies will be prejudicial. Plaintiff has already been prejudiced for extending courtesies. Many of Plaintiff's witnesses are no longer able to testify due to mental or physical incapacity. Because Plaintiff was *pro se,* depositions were not taken in this case. And the memories of both Plaintiffs' and Defendants' witnesses are not preserved and could be lost. The potential of further prejudice is too great for the Court to once again continue this trial. Moreover, witnesses have booked hotels, changed plans on multiple occasions during these continuances, and requested time off work. Teachers and medical professionals have rearranged their schedules for these specific dates, which impacts schools and hospitals.

1

Further, the prejudice to Defendants is minimal if non-existent. Although the situations in which counsel are in is unfortunate, their clients will not be prejudiced. Attorney Douglas Weck – also a partner at Dilworth Paxson – is a distinguished trial attorney with over 13 years experience practicing law. He appeared in this case on December 15, 2022; and is certainly capable of serving as counsel for Defendants. Further, Dilworth Paxson is a substantial law firm in Philadelphia with over 65 attorneys in that office alone. Other attorneys could certainly fill in for their roles. As Defendants have maintained that this action is frivolous and not based on probable cause, Attorney Weck should have no problem defending his client's interests at trial with the substitution of one of Dilworth Paxson's many lawyers as second chair.[1]

Moreover, the Court should consider Plaintiff's good faith efforts – as detailed below – to litigate with civility. Again, Plaintiff's endeavor to extend every courtesy but cannot continue to do so in the face of irreparable prejudice.

**FACTS**

The facts giving rise to this action occurred almost seven years ago in June of 2016. Plaintiff timely initiated her claims on June 14, 2018. Fact discovery closed on March 2, 2020. [ECF 50]. Dispositive motions were filed on June 1, 2020. [ECF 72-1]. The Court denied Defendants' motion for summary judgment on November 13, 2020. [ECF 84]. Trial was then initially set for July 12, 2021. [ECF 91]. The Court unilaterally continued the trial because of the Covid-19 pandemic on July 2, 2021 to February 11, 2022. [ECF 212].

Defendants' contacted counsel for Plaintiff on January 3, 2022 and asked for a continuance of trial because of a medical emergency involving a family member. Even though Plaintiff had long been looking forward to her day in court, counsel for Plaintiff immediately

---

[1] As detailed further below, Attorney Douglas Weck propounded a *Dragonetti* letter against Plaintiffs' counsel, claiming that this action was frivolous and continues to be brought without probable cause. Counsel for Plaintiff strongly disagree with Attorney Weck regarding the merits of Plaintiff's claims.

2

consented to Defendants' request. The parties jointly filed a motion to continue trial on January 1, 2022 [ECF 215], which the court granted on January 4, 2022. Trial was then reset for August 15, 2022. [ECF216]].

Defendants again contacted counsel for Plaintiff on April 27, 2022, and asked for another continuance of trial because of a medical emergency involving a family member. Again, counsel for Plaintiff immediately consented to yet another motion for a continuance of trial, which Defendants filed on May 9, 2022. [ECF 220] ("Mr. Harrington experienced a family health issue which impacts Mr. Harrington's availability for trial, as currently scheduled beginning August 15, 2022"). The Court again granted another continuance of trial on May 9, 2022 and reset the trial for April 3, 2023 [ECF 221].

On December 15, 2022, Defendants entered the appearance of Douglas M. Weck and Lawrence G. McMichael. [ECF 231, 233]. On that same day, Attorney Danielle Goebel filed a Withdrawal of Appearance, stating that Defendants "will continue to be represented by Patrick Harrington and Douglas Weck of Dilworth Paxson LLP." [ECF 232].

While counsel for Plaintiff have yet to speak with Attorney Lawrence G. McMichael, Attorney Douglas Weck has been an active participant in this proceeding. Of note, Mr. Weck has been copied on all substantive correspondence between the parties since the entry of his appearance, actively participated in the meet and confer held between the parties on February 23, 2023, and sent counsel for Plaintiff a letter on March 17, 2023. Mr. Weck handled a meet and confer call with counsel for Plaintiff by himself on March 17, 2023.

### *Plaintiff has Extended Other Courtesies; Defendants Have Not*

At this point, Plaintiff's counsel agreed to two continuances of this trial to accommodate Defendants' counsel. On November 29, 2022, the Court Ordered the designation of Dr. King

and provided that Plaintiff would produce Dr. King for a "deposition at a time and place mutually convenient to Defendants, by no later than January 13, 2023." [ECF 228]. The Court further Ordered that Defendants "may produce a rebuttal expert report by no later than February 3, 2023. *Id.*

On December 1, 2022, Plaintiff reached out to Defendants' counsel for dates to schedule Dr. King's deposition. Exhibit 1. Defendants stated that they would be available – based on constraints in Dr. King's availability – on January 7 or January 8, 2023. *Id.*

After going back to Dr. King to confirm dates, Defendants' counsel reneged on his previous representation. Exhibit 2.

> **From:** Shane Rumbaugh <Shane@rumbgh.com>
> **Sent:** Tuesday, December 6, 2022 4:04 PM
> **To:** Andrew Lacy <Andrew.Lacy@employment-labor-law.com>; Harrington, Patrick M. <pharrington@dilworthlaw.com>
> **Cc:** Goebel, Danielle <dgoebel@dilworthlaw.com>
> **Subject:** RE: Dr. King's Deposition
>
> Patrick –
>
> I want to confirm that you sent the email below indicating your availability for January 7 or 8, correct? Dr. King appears to be available on those days, as mentioned by Andrew Lacy below.
>
> > On Thu, Dec 1, 2022 at 3:31 PM Harrington, Patrick M. <pharrington@dilworthlaw.com> wrote:
> >
> > Andrew:
> >
> > Thank you for your email. I dislike the idea of knowingly breaking the deposition up into multiple evenings/days unless there is no other way, so it will have to be scheduled for a weekend day. Based upon your stated constraint that Dr. King is not available any weekday prior to January 13 and the fact that I, personally, cannot sacrifice a weekend day between now and New Year's, ==it would have to be January 7 or 8 with a preference for January 7.==
> >
> > Please advise whether either ==January 7 or 8 are== available.
> >
> > Patrick

Plaintiff's counsel asked Defendants' counsel to reconsider, given that he had previously stated his availability on certain dates and because Dr. King was in the winter season, which is a terrible time for pediatric doctors. *Id.*

Defendants' counsel, however, refused to accommodate Dr. King. *Id.*

I understand fully the pressure on pediatricians such as Dr. King and the fact that time spent involved in this litigation is time necessarily taken away from their practice treating sick children. As you are well aware, you have named seven individual medical professionals in this lawsuit notwithstanding the fact that your client freely admitted in her deposition that she has never met and/or has no evidence to support her claims as to most of them. However, you and your client remain determined to pull these doctors and other professionals away from treating their patients for multiple days. Unlike these Defendants, however, who had no choice in the matter, Dr. King chose to accept his role as an expert witness and is being compensated $350/hr for his time, as disclosed in his report. He

Eventually, Plaintiff was able to ask Dr. King to rearrange his practice's schedule to accommodate Defendants' counsel. Still, Defendants' counsel would not even consent to starting the deposition on the date that was only convenient for him at a mutually convenient time, 12:00 p.m., which would have allowed him not to reschedule even more patients. Eventually, the Plaintiff acquiesced to the only time to which Defense counsel would agree for Dr. King's deposition, January 9, 2023, at 10:00 a.m. Exhibit 3.

On December 22, 2022, Defendants' counsel contacted the Court *ex parte* to discuss filing a motion and the parties "dispute over production of . . . documents." Plaintiff did not consent to this *ex parte* communication. Exhibit 4. After a joint teleconference was held with the Court's clerk, Plaintiff agreed to produce documents pursuant to the subpoena in an effort to avoid judicial intervention and largely as a courtesy; despite discovery being long concluded in this case.

On February 2, 2023, the day before the deadline, Defendants' counsel asked for an extension of time to comply with the Court's Order requiring Defendants to submit "a rebuttal expert" by February 3, 2023. [ECF 228]. Plaintiff's counsel quickly responded and consented to Defendants' request for additional time (even though Defendants had, just weeks prior, not afforded Plaintiff the same courtesy). In response, Defendants submitted **two** rebuttal expert reports, which is the subject of [ECF 236] currently pending before the Court.

On March 17, 2023, Defendants' counsel sent Plaintiffs a *Dragonetti* letter and requested a phone conference. At the conference, Defendants' counsel stated that the General Counsel for CHOP is outraged that Plaintiff brought this suit. And he has been instructed to sue Plaintiff's lawyers under the *Dragonetti* Act if Plaintiff does not withdraw the present lawsuit.

5

On Sunday, March 19, 2023, Attorney Harrington contacted Attorney Rumbaugh at approximately 11:00 AM ET.  Mr. Harrington expressed his intent to seek a continuance of the trial date. Exhibit. 5. Mr. Harrington indicated that one of his family member's had another medical emergency.  Similarly, Mr. Harrington indicated that Attorney Lawrence G. McMichael was also suffering from a medical condition, which would impact his ability to attend trial.  Mr. Lacy, counsel for Plaintiff, emailed Mr. Harrington, informing him that Plaintiff would not consent to a motion for a further extension of time. *Id*. Notably, Mr. Harrington responded almost immediately, indicating that he "will be filing the motion, and reached out to seek [Plaintiff's] position."

### *Multiple Continuances Have Taken an Emotional Toll on Plaintiff*

Plaintiff has suffered traumatic injury as a result of Defendants' violation of her civil rights. These wounds remain unhealed as Plaintiff has patiently waited for nearly seven years to have her day in court. Each time trial draws near, Plaintiff has to mentally prepare herself and relive a difficult time period in her life. Ex. 6, Declaration of K. Gay (hereinafter "Decl K. Gay"). The first continuance was difficult on Plaintiff.  *Id*. at ¶5.  Plaintiff was restless and anxious following the first continuance. *Id.* at ¶3. Plaintiff had to mentally prepare herself for the rescheduled trial in February 2022. *Id.* at ¶7.  Plaintiff was "emotionally bankrupt" after the trial had been rescheduled a second time for August 2022. *Id.* at ¶10. When trial was rescheduled for a third time to April 3, 2023, Plaintiff began to feel "hopeless" and like she was "never going to have [her] day in court." *Id*. Plaintiff felt a lot of anxiety about whether witnesses would still be willing to testify, and expressed concern whether their memories would dim before the third rescheduled trial date. *Id.* at ¶12.

## **ARGUMENT**

"Continuance of a trial is a matter of discretion with the trial court which will not be disturbed unless a clear abuse has been shown." *Fontana v. United Bonding Ins. Co.,* 468 F.2d 168, 169-170 (3rd Cir. 1972) (citing *Duisberg v. Markham*, 149 F.2d 812 (3d Cir.), cert. denied, 326 U.S. 759, 66 S.Ct. 98, 90 L.Ed. 456 (1945). "[U]nder this abuse of discretion standard, a trial court's control of its docket will not be disturbed "'except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant.'" Moreover, any party challenging a ruling denying a continuance request, "ha[s] a heavy burden to bear, ..., as matters of docket control and conduct of [litigation] are committed to the sound discretion of the district court." *Lease v. Fishel*, 712 F.Supp.2d 359, 371 (M.D. Pa. 2010) citing *In re Fine Paper Antitrust Litigation* 685 F.2d 810, 817 (3d Cir.1982) (citations omitted).

Courts have exercised their discretion by denying requests for continuances when there have been multiple previous requests to continue filed by the same party. *Constant v. New York Cas. Ins. Co.*, 1990 WL 39843, *5 (E.D. Pa. 1990) (denying defendant's request for a third continuance of trial); *Baker v. Wayne-Dalton Corp*., 2004 WL 86775, *3 (E.D. Pa. 2004) (denying defendant's second request for a continuance of trial). The court has also exercised that discretion when the request for a continuance is filed "just weeks before trial." *Beautyman v. Laurent*, 829 Fed. Appx. 581, 585 (3rd Cir. 2020) (denying request to continue trial made weeks before the scheduled trial date).

Here, the Court should deny Defendants' motion to continue because Plaintiff will be prejudiced by a fourth continuance of trial, witnesses have already been subpoenaed and scheduled for trial, Defendants have another attorney who can handle the proceeding, Defendants

have sought and obtained multiple other continuances, trial is scheduled for only three days, and trial is set to begin in less than two weeks.

**I. Defendants' Request will Only Prejudice Plaintiff.**

The Court and Plaintiff's counsel have extended Defendants two opportunities to continue this case. Plaintiff has already suffered prejudice in that two witnesses of Plaintiff can no longer testify because – due to the time delay – are no longer physically able because of age. Both of Plaintiff's parents who were previously designated as witnesses will no longer be able to testify. Multiple witnesses for Plaintiff have scheduled and rescheduled trips and plans throughout the two previous continuances. And Plaintiff's current and remaining witnesses – including Plaintiff's expert – have gone through great lengths to make themselves available. As more time passess, memories fade. Both Dr. Alan Cohen and Daniel Daley are in their seventies and Estelle Price is in her eighties. *See* Exhibit 6, ¶ 12. Al Gury, who was on Plaintiff's original witness list, is also in his seventies. *Id.* There are no depositions in this case preserving those memories. And these memories may be lost if the Court again moves this trial.

Further, the prejudice to Plaintiff, Dr. Gay, is real. Plaintiff lost her only child who committed suicide after leaving Defendants' care. She has fought for years as a *pro se* Plaintiff to have her day in Court and seek justice for Defendants holding her daughter for 17 days without a medical basis for doing so and interfering with her constitutional rights to parent her child. She has now prepared herself mentally and emotionally three times for a jury trial. Much of her support – including her parents – is no longer there with her parents' health severely declining in the interim of the last two continuances. Dr. Gay deserves to finally close this chapter in her life and have a jury of her peers determine whether Defendants violated her constitutional rights in this case. She has already suffered emotional distress because the trial has

been rescheduled on three occasions, which has required her to repeatedly prepare for and relive her experiences. *See* Exhibit 6 ¶¶ 2,4,11.

Moreover, Plaintiff's counsel has rearranged their schedules multiple times to accommodate Defendants' requests. Plaintiff's counsel has moved depositions, vacations, and sought extensions in other cases purely based on their acquiescence to Defendants' previous requests.

The Court should not allow Plaintiff to be further prejudiced. Defendants have hired Dilworth Paxson, one of Philadelphia's largest law firms. Co-counsel, Doug Weck, has been cc'd on nearly every correspondence since his appearance in this case and has participated in both of the last two meet-and-confer conferences that the parties have held. Lawrence McMichael has yet to have any substantive communication with Plaintiff's counsel since his appearance in the case, with the expectation of the *Dragonetti* letter that he signed. Further, although Mr. Harrington's previous and potentially current family health issues are unfortunate, there is no indication that he and Mr. Weck could not be available at trial in this case.

Or, at the very least, find another substitute counsel to fill Mr. Weck's role at trial as he moves into Mr. Harrington's role. Indeed, Mr. Weck has a J.D. from the University of Pennsylvania Law School with a Ph.D. from the same school in Legal Philosophy. He has practiced law for longer than Mr. Harrington; he was admitted to the bar in 2010 while Mr. Harrington was only admitted to the bar in 2013. By all accounts, Mr. Weck could certainly serve as lead counsel and Dilworth Paxson, a law firm with more than 65 lawyers in their Philadelphia office, can find substitute counsel to fill any necessary roles at trial.

As such, the Court should deny Defendants' request because it is both prejudicial to Plaintiff and not prejudicial to Defendant.

II. **Plaintiff has Extended Every Courtesy at Every Turn; Defendants Have Not.**

Apart from threatening to sue Plaintiff's lawyers two weeks before trial, Defendants have not extended the same collegiality and civility that Plaintiff has extended Defendants. Plaintiff has now twice agreed to move the trial date to accommodate Defendants' counsel. Plaintiff agreed to not engage in motion practice after Defendants served an untimely subpoena after the close of discovery with shaky grounds for its enforcement. Further, Plaintiff agreed to extend the deadline to file their rebuttal expert report.

Meanwhile, Defendants refused to accommodate Dr. King and his practice – where he was attending to sick children – because Dr. King "**chose**" to participate in this litigation. Defendants' counsel would only agree to appear on a date/time convenient for him. Further, Defendants' counsel – after receiving an extension to file **a rebuttal expert report** filed two reports, without informing Plaintiff's counsel that this was Defendants' intent. Lastly, and most egregiously, two weeks before trial, Defendants have made a formal *Dragonetti* threat against Plaintiff's respective law firm.

Now, Defendants ask for Plaintiff's consent to move the trial yet again. As demonstrated above, Plaintiff is certainly willing to provide courtesies when able to counsel. At this juncture, however, Plaintiff can not provide the continued courtesy of consenting. This request would now severely prejudice Plaintiff.

III. **Defendants Move to Continue this Trial on the Heels of Hurling a Frivolous *Dragonetti* Letter.**

Plaintiff always endeavors to give opposing counsel every courtesy possible during litigation. Despite the fact that Plaintiff has not received reciprocal courtesies, Defendants have

now teetered into bad faith. As such, Plaintiff must now regretfully file the instant Motion. Defendants cannot not both argue that Plaintiff's case is frivolous and lacking probable cause only to argue days later that certain lead counsel is critical to the case's outcome.

On Friday, March 17, 2023, Defendants' counsel sent Plaintiff a settlement offer with a release of a *Dragonetti* claim against Plaintiff's counsel's respective law firm. On a telephonic conference, Defendants' counsel stated – in no uncertain terms – that if Plaintiff continued this action, Defendants would file a *Dragonetti* action against Plaintiff. As the Court is likely aware, to maintain a *Dragonetti* action, Defendants counsel must later prove that Plaintiff's counsel wrongfully used the judicial process against their clients. And the standard is exacting to prove such a claim. *Schmidt v. Currie*, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005) ( Plaintiff must have "acted in a grossly negligent manner **or** without probable cause in pursuing the underlying action, **and** that they had an improper purpose in doing so."). Of course, Plaintiff has already defeated summary judgment in this matter. As such, there can logically and necessarily have been no prosecution of this action without probable cause and improper use. *Bobrick Corp v. Santana Products, Inc.*, 698 F.Supp.2d 479, 494-95 (M.D. Pa. 2010) (finding that because the court had ruled in favor of party on summary judgment that it foreclosed the issue of probable cause).

Defendants' letter was a thinly-veiled threat to intimidate Plaintiff into accepting a settlement offer by a certain date before trial. When that failed – and Plaintiff's counsel informed Defendants' counsel that this threat was baseless, frivolous, and harassing in nature – Defendants have sought to continue trial. Plaintiff continues to maintain that Defendants' threat is baseless. But if that is their position, they should have no problem defending their case at trial by substituting one of the firm's many lawyers into this case to fill any vacant role at trial.

12

Respectfully submitted,

Date: March 19, 2023

/s/ Andrew Lacy, Jr

Andrew Lacy, Jr. Esq. (Bar No. 321232)
**THE LACY EMPLOYMENT LAW FIRM LLC**
2675 Market Street, Suite 200
Philadelphia PA, 19104
Tel: (412) 301-3908
Andrew.lacy@employment-labor-law.com

Shane M. Rumbaugh (Bar No. 329687)
Alexander J. Keller (Bar. No 332297)
**RUMBAUGH LAW PLLC**
2400 Ansys Drive, Suite 102
Canonsburg, PA 15317
Tel: (724) 912-6781
Email: shane@rumbgh.com
          alex@rumbgh.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been forwarded to the below Defendants on this date via the Court's electronic filing system:

> Patrick Harrington
> Douglas Weck
> Lawrence G. McMichael
> DILWORTH PAXSON LLP
> 1500 Market Street - Suite 3500E
> Philadelphia, PA 19102
> Phone: 215-575-7000
> Fax: 215-575-7200
> Email: pharrington@dilwrothlaw.com
> Email: dweck@dilworthlaw.com
> Email: lmcmichael@dilworthlaw.com

Date: March 19, 2023

> /s/ Shane M. Rumbaugh
>
> Shane M. Rumbaugh (Bar No. 329687)
> **RUMBAUGH LAW PLLC**
> 2400 Ansys Drive, Suite 102
> Canonsburg, PA 15317
> Tel: (724) 912-6781
> Email: alex@rumbgh.com