# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHRYN GAY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| CHILDREN'S HOSPITAL OF PHILADELPHIA, ELENI LANTZOUNI, JENNIFER LOUIS-JACQUES, MICHELE ZUCKER, LEELA JACKSON, KATIE HOEVELER[1], MORTIMER PONCZ, AND ALAN R. COHEN | ) ) ) ) ) ) ) ) Case No. 2:18-cv-02880-NIQA |
| Defendants. | ) ) |

## DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants, Children's Hospital of Philadelphia, Eleni Lantzouni, Jennifer Louis-Jacques, Michele Zucker, Leela Jackson, Mortimer Poncz, and Alan R. Cohen ("CHOP" or "Defendants"), through undersigned counsel, respectfully move this Honorable Court for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). In support of this motion, CHOP relies upon its accompanying Memorandum of Law attached hereto.

Dated: June 15, 2023

*/s/ Lawrence G. McMichael*
DILWORTH PAXSON LLP
Lawrence G. McMichael, Esquire
Douglas M. Weck, Esquire
Patrick M. Harrington, Esquire
PA Attorney Id. Nos. 28559/316331/317998
1500 Market Street, Suite 3500E
Philadelphia, PA 19102-2101
Telephone: (215) 575-7000
*Attorneys for Defendants*
lmcmichael@dilworthlaw.com
dweck@dilworthlaw.com
pharrington@dilworthlaw.com

---

[1] Defendant Katie Hoeveler was dismissed on June 11, 2023 by stipulation of the Parties. *See* ECF 259.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHRYN GAY,<br><br>    Plaintiff,<br><br>v.<br><br>CHILDREN'S HOSPITAL OF PHILADELPHIA, ELENI LANTZOUNI, JENNIFER LOUIS-JACQUES, MICHELE ZUCKER, LEELA JACKSON, KATIE HOEVELER[2], MORTIMER PONCZ, AND ALAN R. COHEN<br><br>    Defendants. | Case No. 2:18-cv-02880-NIQA |

**DEFENDANTS' BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendants, Children's Hospital of Philadelphia, Eleni Lantzouni, Jennifer Louis-Jacques, Michele Zucker, Leela Jackson, Mortimer Poncz, and Alan R. Cohen ("CHOP" or "Defendants"), by and through their undersigned counsel, hereby submit this memorandum of law in support of its Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a) ("Motion"). For the reasons set forth below, CHOP urges the Court to enter judgment as a matter of law in favor of CHOP on all claims by Plaintiff Kathryn Gay ("Plaintiff").

**I.      STANDARD FOR JUDGMENT AS A MATTER OF LAW**

Federal Rule of Civil Procedure 50(a) permits the entry of judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find" for the non-movant. F.R.C.P. 50(a)(1). More specifically, Federal Rule of Civil Procedure 50(a) provides:

> (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>     (A) resolve the issue against the party; and

---
[2] Defendant Katie Hoeveler was dismissed on June 11, 2023 by stipulation of the Parties. *See* ECF 259.

>(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

F.R.C.P. 50(a)(1). This Rule "allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 447 (2000) (*quoting* 9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, p. 240 (2d ed.1995)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) ("the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict."). The court should grant such a motion "'if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'" *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 88 (3d Cir. 2000) (*quoting Lightning Lube. Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir.1993)).

The question "is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube*, 4 F.3d at 1166 (*quoting Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978)); *see also Walter v. Holiday Inns, Inc.* 985 F. 2d 1232, 1238 (3d Cir. 1993).

## II.  RELEVANT EVIDENCE PRESENTED AT TRIAL

Defendants' Motion is based on the profound absence of relevant evidence in support of Plaintiff's Section 1983 claim – without which, Plaintiff's claim must fail as a matter of law. To the extent there was any relevant evidence presented at trial with regard to Plaintiff's claim, such evidence, viewed in a light most favorable to Plaintiff, established the following key facts:

- o  Plaintiff admitted that there was no governmental involvement of any kind with respect to Defendants' care provided to K. [Trial Transcript – Day 2, at 82:15-83:1.][3]

---

[3] References to "Trial Transcript – Day 1" refer to the transcript of testimony occurring on June 12, 2023; "Trial Transcript – Day 2" refer to the transcript of testimony occurring on June 13, 2023; and "Trial Transcript – Day 3" refer to the transcript of testimony occurring on June 14, 2023.

2

- Janee Johnson, employee of Philadelphia DHS, admitted that neither she, nor anyone else at DHS, communicated with any Defendant or anyone at CHOP to admit K., hold K. in the hospital or direct any portion of K.'s care. [Trial Transcript - Day 1 at 83:23-84:11.]
- Plaintiff Kathryn Gay testified that she did not seek to discharge her daughter and that the "only reason" she failed to demand her daughter's discharge was she was afraid to lose custody of her daughter. [Trial Transcript – Day 1 at 199:2-20.]
- Plaintiff's Expert, Dr. King, who was qualified by the Court as a "pediatrician," admitted that K. satisfied some criteria for the medically necessary hospitalization of an anorexia patient like K., including significant weight loss, orthostasis by heart rate (large changes in heart rate laying down to standing), and failure of outpatient treatment. [Trial Transcript - Day 1 at 152:9-11; 159:14-16; 161:20-21.]
- This Court sustained objection based upon its prior ruling that reporting or failing to report suspected child abuse as a mandated reporter (like Dr. Poncz) cannot constitute state action. [Trial Transcript - Day 1 at 70:22-71:2.]
- The Court has previously ruled that mandatory reporting or not mandatory reporting by anyone at CHOP is not state action. *Gay v. Children's Hosp. of Philadelphia*, No. 18-CV-2880, 2018 WL 3447173, at *5 (E.D. Pa. July 16, 2018)
- Plaintiff, Kathryn Gay acknowledged the custody order and agreement that was in place during K's hospitalization, which is a binding state court order that neither this Court nor the jury can overturn. [Trial Transcript - Day 1 at 173:5-17; 175:2-8.]
- Plaintiff's former supervisor testified that she worked at the Pennsylvania SPCA in 2017 and 2018 – starting a new position as a veterinarian around six months after K.'s hospitalization, and leaving her position only after K.'s suicide. [Trial Transcript – Day 2 at 129:22-130:12.]

Plaintiff's claims against CHOP rest solely on the fact that CHOP followed the custody order and agreement that Plaintiff agreed to with her ex-husband, which was ordered by the Philadelphia Court of Common Pleas. This Court lacks jurisdiction to reject that order.

CHOP did not discharge K., but rather advised Plaintiff that in their medical opinion, further treatment was required. Plaintiff testified that "what the government instructed CHOP to do or not to do, I do not know," and she had "no information on that," thus admitting there was no governmental involvement in aspect to Defendants' care provided to K. [Trial Testimony – Day 2, at 82:23-24; 83:1.] This admission and wild speculation are not evidence of state action and are legally insufficient. In addition to Plaintiff's admission, Plaintiff's only DHS witness testified that DHS had no involvement in K.'s medical care. There is no evidence from which a jury reasonably

3

could find that any Defendant was a state actor that violated Plaintiff's parental rights. It simply did not happen.

### III.     ARGUMENT

This Court should enter judgment as a matter of law in favor of CHOP with respect to Plaintiff's claim against CHOP because (1) there is no state action; (2) CHOP did not interfere in Plaintiff's parental rights, as Plaintiff never demanded that CHOP discharge her daughter; (3) Plaintiff consented to the treatment of her daughter; and (4) Plaintiff's expert admits that K. needed treatment and met certain criteria supporting hospitalization during the entire stay.

Furthermore, Defendant Children's Hospital of Philadelphia cannot be liable under Section 1983 for the acts of its employees absent evidence of an official policy promulgated by an identified final decision maker under *Monell*. Plaintiff has no economic loss or medical damages sustained as a result of any of Defendant's actions. Pursuant to the *Rooker-Feldman* doctrine, this Court is bound to enforce the terms of the custody order entered by the Philadelphia Court of Common Pleas.

#### A.  No Defendant Engaged in Any Conduct as a State Actor

The United States Court of Appeals for the Third Circuit has provided three tests to determine when a private individual or entity, such as Defendants, engages in conduct as a state actor:

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal alterations, quotations, and citations omitted). Under each of these tests, "'[t]he inquiry is fact-specific.'" *Id*. (*quoting Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995)). As to second and third prongs of the *Kach*

4

analysis, Plaintiff has admitted in both her trial testimony and her deposition that there is no evidence of any state actor helping any Defendant, directing any Defendant, or jointly participating with any Defendant in the alleged deprivation of Plaintiff's Constitutional rights.

As to the first 'exclusive prerogative' prong, this Circuit has previously stated that "this test imposes a rigorous standard that is rarely . . . satisfied." *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165 (3d Cir.2001) (Alito, J.). *Accord Leshko v. Servis*, 423 F.3d 337, 347 (3d Cir. 2005) (the "exclusive public function requirement is a rigorous standard that is rarely satisfied."). In order to determine whether a function is the exclusive prerogative of the state, courts look to the historical practice of the particular state at issue. *Leshko,* at 343 n.4 (3d Cir. 2005) (*citing American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 55–57, (1999)). Here, plaintiff "ha[s] not provided any such historical evidence that would suggest that the investigation of child abuse has traditionally been the exclusive prerogative of Pennsylvania." *A.L. v. Eichman*, 376 F. Supp. 3d 547, 559 (W.D. Pa. 2019). Nor has Plaintiff "cited any authority holding that the investigation of child abuse is traditionally the exclusive prerogative of the Commonwealth of Pennsylvania." *Id*.

District Courts frequently determine as a matter of law, as this Court has done in the past, whether the private entity performed a function traditionally the exclusive prerogative of the state. *See Reese v. Source 4 Tchrs*., No. CV 17-4588, 2021 WL 4476892, at *8 (E.D. Pa. Sept. 29, 2021) (Quinones, J.) ("Defendant is entitled to summary judgment on Plaintiff's § 1983 claim"); *Damico v. Harrah's Philadelphia Casino & Racetrack*, 674 F. App'x 198, 203 (3d Cir. 2016) (in affirming summary judgment by the District Court, the Third Circuit "f[ound] it clear from the record that there is no evidence that under any of the three tests that [Defendant] was effectively acting as the State"); *Pipitone v. Camp, Dresser & McKee*, No. 5:16-CV-03777, 2017 WL 1550016, at *8 (E.D. Pa. May 1, 2017) (in granting summary judgment, finding that "the record does not contain

evidence from which a reasonable jury could find that [defendant's] conduct in this matter may be fairly treated as that of the State itself.").

As it pertains to the allegations currently before this Court, in *Kia P. v. McIntyre*, 235 F.3d 749 (2d Cir. 2000), the Second Circuit accurately restated binding precedent from the United States Supreme Court, correctly explaining that "insofar as [a] Hospital and its employees rendered medical care to [plaintiff] and her newborn daughter, the Hospital was therefore not a state actor." *Id.* at 756. That is the black-letter law, that medical decisions of private medical professionals concerning care, discharge, and/or transfer of patients are not state action. *See, e.g.*, *Blum v. Yaretsky*, 457 U.S. 991, 1008 (1982) (holding that nursing home discharge and transfer "decisions [that] ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State" are not state action). Among other things, that principle is based upon the idea that decisions in day-to-day hospital care are not "the kind of decisions traditionally and exclusively made by the sovereign for and on behalf of the public." *Id.* at 1012. It also comports with the related principle that disagreements about the appropriateness of medical treatment are not actionable under Section 1983. *See, e.g.*, *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) ("[M]ere allegations of malpractice do not raise issues of constitutional import."). Again, Plaintiff has not produced any testimony or evidence that any of the CHOP Defendants were acting at the behest or in conjunction with the government.

Plaintiff needs to prove that <u>each Defendant</u> individually satisfies the test set forth by *Kach*. However, Plaintiff has no evidence to support her claim that any of the Defendants were "state actors." The doctors who provided care to K. had no communication with DHS regarding admitting, holding, discharging, or caring for K.

At no point was the hospital holding K. because of an investigation by child-protective

6

services. In fact, Janee Johnson, who works for Philadelphia DHS and testified in Plaintiff's case, stated clearly that she (1) did not instruct, nor is aware of anyone who instructed anyone at CHOP to hold K. in the hospital; and (2) did not instruct, nor is aware of anyone who instructed anyone at CHOP to admit K. or care for K. [Trial Transcript - Day 1 at 83:23-84:11.] Moreover, only when a hospital is holding a child "solely pending action by [child protective services]" is there a possible finding of state action. *See Kia P., supra* 235 F.3d 749, 757 (emphasis added). When, like here, doctors are providing medical care, and the child is not medically cleared for discharge, they are per se not state actors. *See id.* (explaining that when hospital was "treating [the child] as its medical patient" and "had not declared her ready for release," the hospital was "a private actor providing medical care"). K. was being treated as CHOP's medical patient and was not ready for release until Renfrew informed CHOP on July 1, 2016 that it was able to accept K. as a patient – and she was discharged from CHOP that same day.

Plaintiff may point to Dr. Poncz's mandatory report. As a mandatory reporter under Pennsylvania law, Dr. Poncz was required to file a report with the state to allow the state to investigate. This report occurred in May 2016, weeks before and unrelated to the hospitalization. [Trial Transcript, Day 1 at 64:19-21; Day 2 at 111:21-112:2.] The Court has already determined that Dr. Poncz's mandated report was not state action, which is law of the case. So, Plaintiff is not permitted to base her case on that fact. As this Court has previously held, "the Defendants do not become state actors solely because, as mandated reporters under state law, they reported or failed to report suspected child abuse." *Gay v. Children's Hosp. of Philadelphia*, No. 18-CV-2880, 2018 WL 3447173, at *5 (E.D. Pa. July 16, 2018). And, Dr. Poncz was in no way involved in K.'s hospitalization or care weeks later. He is a blood-disorder doctor and does not treat eating-disorder patients. None of K.'s treating doctors were even aware of his report.

7

Similar to Dr. Poncz, Dr. Cohen was not a doctor on the medical team treating K. There is simply no evidence that CHOP or any Defendant engaged in state action

### B. CHOP did not Interfere in Plaintiff's Parental Rights, as Plaintiff Never Demanded Her Daughter's Discharge

K was discharged from CHOP on July 1, 2016 when she was: (1) medically stable to be transferred to Renfrew for the first time and (2) Renfrew had a spot available for K to continue the next phase of her treatment at its full-day program.

During the course of K's stay at CHOP, Plaintiff never demanded that K be discharged because Plaintiff was afraid of such a demand on her active custody dispute with K's father. This reasoning is clear in Plaintiff's testimony. Specifically:

```
 2  Q.  Okay.  I understand.
 3      So before asking -- or before deciding whether to say to
 4  Children's Hospital, "Enough is enough.  I want my kid and I'm
 5  taking her home now," before doing that, you talked to a
 6  lawyer, and the lawyer said, "Don't do that."
 7      Is that fair?
 8  A.  Yeah, the lawyer -- without -- without medical -- I forget
 9  what the acronym is.  But, yeah, I could not take her out
10  against medical advice.
11  Q.  Okay.  So you chose not to do that because your lawyer
12  told you not to do it.
13  A.  Correct.
```

[Trial Transcript - Day 2 at 78:2 to 13.] Plaintiff further testified the "only reason" she failed to demand her daughter's discharge was she was afraid to lose custody of her daughter. [Trial Transcript – Day 1 at 199:2-20.]

CHOP could have recommended discharge earlier, but Plaintiff stood in the way. CHOP's first recommendation was intensive Family-Based Therapy ("FBT") with the CHOP eating-

8

disorder clinic, which Plaintiff acknowledged would have allowed K. to go home earlier with her parents. [Trial Transcript – Day 2, at 6:17-19.] However, FBT requires both parents to be involved in therapy and nutritional management — as a family. Plaintiff refused to participate in therapy with her ex-husband. As a result, with both parents' agreement, CHOP sought to obtain a spot for K. in an intensive eating disorder program outside of CHOP, first at Brandywine hospital and then at Renfrew (after Brandywine declined admission). K. was discharged on July 1, 2016, the same day a spot became available for her at Renfrew. Besides CHOP, there was no place the child could go absent a spot in a specialized eating disorder program.

Summarily, CHOP could not have refused to discharge K. when Plaintiff has clearly admitted in her testimony to the jury, that she never demanded CHOP discharge K.

    **C.  Plaintiff Consented to K.'s Treatment**

It is conceded by Plaintiff that it was medically necessary to treat K for anorexia nervosa. Plaintiff testified that "we were planning to go to Renfrew for the outpatient treatment," [Trial Testimony – Day 1 at 178:21] that Plaintiff was "try[ing] to get [her] daughter into Children's Hospital of Philadelphia's outpatient program at one point," [*Id.* at 179:3-5] and that Plaintiff was "desperate" to get treatment for K. [*Id.* at 177:4-6.] Further, Plaintiff signed consent forms authorizing K's treatment both in the emergency department and as an admitted patient at CHOP. [Trial Transcript – Day 2, at 54:20-21; 56:6-7; 57:9-21.] Additionally, Plaintiff shared legal custody with her ex-husband, Miroslaw Kozlowski, who also consented to K.'s admission and care, and was "happy that K[.] had been admitted into Children's Hospital," so "[f]inally someone take care about [treating] her disease." [Trial Transcript – Day 3 at 67:5-9.]

9

### D. Plaintiff's Expert, Dr. King, Acknowledged that K. Needed Treatment and Satisfied Certain Criteria Supporting Inpatient Admission

Even Plaintiff's own expert, Dr. King, agreed that K. needed to be treated for anorexia, and stated merely that such treatment could have occurred in an outpatient setting. Dr. King admitted that K. met some of the criteria for admission and inpatient treatment, including significant weight loss, orthostasis by heart rate, and failure of outpatient treatment. [Trial Transcript – Day 1 at 152:9-11; 159:14-16; 161:20-21.] Specifically, Dr. King agreed that "based upon the [weight] number in October of 2015," at "71 percent of ideal body weight, then she would meet at least one of the admission criteria." [Trial Transcript – Day 1 at 152:9-11.] Dr. King further agreed that "for ongoing hospitalization [orthostasis by pulse] is a criteria," and admitted that K.'s orthostasis by pulse was "documented in the record, up to and including the day of discharge." [Trial Transcript – Day 1 at 152:13-16; 153:3.] Finally, Dr. King acknowledged that for the period from October, 2015 through June 13, 2016, K. "had lost 15 pounds during that period of time." [Trial Transcript – Day 1 at 159:7-13.]

Pursuant to *Kia P*, *supra*, which has been cited favorably by this Court, when doctors are providing medical care, they are *per se* not state actors. Plaintiff and her expert clearly admit that K. needed treatment for anorexia, but their contention is that the modality of treatment should have been outpatient rather than inpatient. Disagreements about the appropriateness of medical treatment are simply not constitutional issues. *See, e.g., Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) ("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import.")

### E. Defendant Children's Hospital of Philadelphia Must Be Dismissed as There is No *Respondeat Superior* Liability Under Section 1983

In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 659 (1978), the Supreme Court established that an employer "cannot be held liable solely because it employs a tortfeasor—or, in other words… be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Rather, Section 1983 liability exists only where an employer "under color of some official policy, causes an employee to violate another's constitutional rights." *Id.* at 692. *See also M.B. v. Schuylkill Cnty.*, 375 F. Supp. 3d 574, 587 (E.D. Pa. 2019) ("Organizational defendants, however, cannot be held liable under § 1983 on a *respondeat superior* theory.") Plaintiff must also show that the final policymaker at CHOP promulgated or knew of an unconstitutional policy or custom. *Santiago v. Warminster Twp.*, 629 F.3d 121, 134 (3d Cir. 2010).

In addition to no liability existing for any Defendant, the hospital itself cannot be liable under Section 1983 solely by virtue of being the employer of an individual who is found to have violated Section 1983. Further, Plaintiff has presented no evidence or demonstration of any policy that caused any alleged violation of Plaintiff's constitutional rights. Plaintiff has not even identified or alleged that the head policy maker at CHOP violated her rights, which is the test. [*See* Trial Transcript – Day 1 at 169-214, *generally*]. Accordingly, Defendant Children's Hospital of Philadelphia must be dismissed as there is no *respondeat superior* liability under Section 1983

### F. Plaintiff Has No Damages

Plaintiff also has no damages with any connection to CHOP. First, Plaintiff has no wage loss claim as Plaintiff was working as a veterinarian both during and after the daughter's hospitalization. In fact, Plaintiff started a new job in 2017, at least six months after K.'s hospitalization, which she left only after K.'s suicide a year later. [Trial Transcript – Day 2, at 130:8-12.] She has also been employed by her now-counsel as a paralegal, undermining her claim

11

that she cannot work. Plaintiff's employment decisions have nothing to do with CHOP's medical care of her daughter a year-and-a-half prior. Notably, there has been no testimony or evidence with regard to Plaintiff's compensation in any position she has held. As such, there is no evidence upon which to base any claim regarding wages past, present, or future. There is no evidence of Plaintiff's salary in the record.

The Third Circuit has stated that it requires expert testimony to support wage loss claims and "has required more than speculative opinion when determining damages for prospective earnings loss." *Benjamin v. Peter's Farm Condo. Owners Ass'n*, 820 F.2d 640, 642 (3d Cir. 1987). Even with expert testimony, it has held that "expert testimony of post-injury earning capacity must be based upon the proper factual foundation." *Benjamin v. Peter's Farm Condominium Owners Ass'n.*, 820 F.2d 640, 643 (3d Cir.1987). Even an "expert's testimony regarding future earnings loss must be accompanied by a sufficient factual foundation before it can be submitted to the jury." *Elcock v. Kmart Corp*., 233 F.3d 734, 754 (3d Cir. 2000).

Moreover, Plaintiff has offered no competent medical evidence regarding her alleged psychological injury and has admitted that she was never treated for alleged PTSD, depression, and anxiety prior to her daughter's death. "Expert medical testimony on causation requires the witness to offer expert medical testimony on the injury itself and the relationship between the injury and the alleged cause." *Niklaus v. Vivadent, Inc., U.S.A.*, 767 F. Supp. 94, 96 (M.D. Pa. 1991), *aff'd sub nom. Niklaus v. Patterson Dental Supply Co*., 986 F.2d 1409 (3d Cir. 1993). *See also In re Paoli R.R. Yard PCB Litig., No. 86-2229,* 2000 WL 1279922, at *2 (E.D. Pa. Sept. 6, 2000) (discussing that "unequivocal medical testimony is necessary to establish the causal connection in cases where there is no obvious causal relationship between the accident and the injury.")

Finally, Plaintiff has not offered any expert testimony linking her alleged injuries – 18

months after her daughter's discharge from CHOP – to any action taken by any Defendant during her daughter's hospitalization. "Compensatory damages are only available to a prevailing plaintiff to the extent he can prove the constitutional violation caused his injury." *Keller v. Crawford*, 465 F. Supp. 3d 472, 483–84 (E.D. Pa. 2020) (*citing Carey v. Piphus*, 435 U.S. 247, 258 (1978).) (emphasis in original.) "Such a showing embodies the traditional tort concept of requiring proximate cause between the defendant's actions and the plaintiff's injury." *Id*. (*citing Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000).) "Thus, to recover damages for his physical injury Plaintiff must introduce evidence that Defendant's [actions]… caused it." *Id*.

Plaintiff's claim that reading CHOP medical records after her daughter's death caused her injury is neither plausible nor actionable. Her constitutional rights were not violated by her reading medical records.

### G. This Court is Bound by the Custody Order Pursuant to *Rooker-Feldman*

Plaintiff, Kathryn Gay acknowledged the custody order and agreement that was in place at all pertinent times, to which she agreed and was entered as an order of the Philadelphia Court of Common Pleas. [Trial Transcript - Day 1 at 173:5-17; 175:2-8.] While Plaintiff may be angered by the terms of the agreement she entered into, "the *Rooker-Feldman* doctrine bars federal district courts from reviewing final judgments of a state court." *Okoye v. City of Philadelphia*, No. 23-CV-1295, 2023 WL 2939586, at *2 (E.D. Pa. Apr. 13, 2023)(Quiñones-Alejandro, J.) (*citing Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Moreover, "*Rooker–Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders," such as finding CHOP should have violated the custody order – an order entered by the Philadelphia Court of Common Pleas. *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005). Further, "federal courts lack subject matter jurisdiction to engage in

13

appellate review of state court determinations or to evaluate constitutional claims that are inextricably intertwined with the state court's decision in a judicial proceeding." *Marks v. Stinson*, 19 F.3d 873, 885 n. 11 (3d Cir.1994). Here, Plaintiff's "federal claim is inextricably intertwined with an issue adjudicated by a state court" as the "federal court must take an action that would negate the state court's judgment." *Knapper*, at 581. Plaintiff is claiming that the Defendants violated her parental rights by following the very court custody order to which she agreed. *Rooker-Feldman* bars that claim.

Despite Plaintiff's protestations, any evidence that any Defendant should have denied K's father the right to be present at K's bedside, which was explicitly permitted under the custody order, cannot serve as evidence in support of Plaintiff's Section1983 claim, pursuant to *Rooker-Feldman*.

## IV. **CONCLUSION**

For these reasons, it is respectfully requested that this Court grant Defendants' motion for judgment as a matter of law pursuant to Rule 50(a).


Dated: June 15, 2023                    */s/ Lawrence G. McMichael*
                                                   **DILWORTH PAXSON LLP**
                                                   Lawrence G. McMichael, Esquire
                                                   Douglas M. Weck, Esquire
                                                   Patrick M. Harrington, Esquire
                                                   PA Attorney Id. Nos. 28559/316331/317998
                                                   1500 Market Street, Suite 3500E
                                                   Philadelphia, PA 19102-2101
                                                   Telephone: (215) 575-7000
                                                   Facsimile: (215) 575-7200
                                                   *Attorneys for Defendants*
                                                   lmcmichael@dilworthlaw.com
                                                   dweck@dilworthlaw.com
                                                   pharrington@dilworthlaw.com

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHRYN GAY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHILDREN'S HOSPITAL OF ) <br> PHILADELPHIA, ELENI LANTZOUNI, ) <br> JENNIFER LOUIS-JACQUES, MICHELE ) <br> ZUCKER, LEELA JACKSON, KATIE ) <br> HOEVELER, MORTIMER PONCZ, AND ) <br> ALAN R. COHEN ) <br> ) <br> Defendants. ) | Case No. 2:18-cv-02880-NIQA |

## CERTIFICATE OF SERVICE

I, Patrick Harrington, Esquire, do hereby certify that the foregoing, Defendants' Motion for Judgment as a Matter of Law and brief in support were filed electronically via the Court's electronic filing system on the date set forth below and, therefore, made available to all counsel of record.

Date: June 15, 2023

*/s/ Patrick Harrington*
Patrick Harrington, Esquire
**Dilworth Paxson LLP**
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHRYN GAY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| CHILDREN'S HOSPITAL OF PHILADELPHIA, ELENI LANTZOUNI, JENNIFER LOUIS-JACQUES, MICHELE ZUCKER, LEELA JACKSON, KATIE HOEVELER, MORTIMER PONCZ, AND ALAN R. COHEN | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 2:18-cv-02880-NIQA

**ORDER**

AND NOW, this _____ day of _____, 2023, upon consideration of Defendant's Motion for Judgment as a Matter of Law pursuant to F.R.C.P. 50(a), and any response thereto, it is **HEREBY ORDERED** that the Motion is **GRANTED.** All claims against Defendants Children's Hospital of Philadelphia, Eleni Lantzouni, Jennifer Louis-Jacques, Michele Zucker, Leela Jackson, Mortimer Poncz, and Alan R. Cohen are hereby **DISMISSED** with prejudice.

_____
The Honorable Nitza Quiñones Alejandro